JACOB ELIAS *v.* JULIO VERDUGO, MARIA JESUS VERDUGO, HIS WIFE, FRANCISCO P. RAMIREZ, AND FERNANDO SEPULVEDA, *et als.*

EVIDENCE CONTRADICTING ADMISSIONS IN PLEADINGS.—If the complaint in an action against husband and wife to foreclose a mortgage executed by the husband alone, avers that the mortgagor, at the time of its execution, owned the land described in the mortgage as a tenant in common with another person, each owning an undivided one half, and the defendants in their answers admit this allegation, but set up as an affirmative defense a claim to a homestead, evidence to show a parol partition prior to the execution of the mortgage is irrelevant.

PAROL PARTITION OF LAND.—A parol partition of land owned by tenants in common, could be made in California before the adoption of the common law; but the agreement for such partition should be satisfactorily proved, and each tenant in common should have assigned to him and enter upon and possess a specific part of the land in severalty.

HOMESTEAD.—A homestead cannot be carved out of land held in joint tenancy or by tenancy in common.

DECREE IN FORECLOSURE SUIT.—If any of the parties defendant in an action to foreclose a mortgage claim title to the mortgaged premises, or any portion thereof, adversely to the title mortgaged, their rights under such adverse title should be saved in the decree.

APPEAL from the District Court, First Judicial District, Los Angeles County.

Ramirez and Sepulveda, two of the defendants, answered,

setting up title to several portions of the land claimed to be included in the mortgage, adversely to the mortgagor.

The Court decreed the sale of any portion of the southern half of the Rancho San Rafael which might remain after the assignment of a homestead of the value of five thousand dollars.

The other facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp*, for Appellant.

A parol partition of land not carried into effect by possession of each party of his respective share according to the partition, is not valid and binding on the parties. (*Jackson* v. *Hardee*, 4 Johns. 202 ; *Jackson* v. *Duncan*, 14 Johns. 224, and cases cited in note *a*.)

Exclusive possession of one tenant in common of a particular part, accompanied by a denial of his co-tenant's right of possession in the part thus occupied, may grow into a legal presumption of partition having been made. (*Lloyd* v. *Gordon*, 2 Har. & McH. 254.)

No parol partition is effectual unless accompanied by deeds from one co-tenant to the other, inasmuch as the Statute of Frauds applies to such cases. (*Porter* v. *Hill*, 9 Mass. 34 ; *Porter* v. *Perkins*, 5 Mass. 232 ; *Snively* v. *Luce*, 1 Watts, 69 ; *Gratz* v. *Gratz*, 4 Rawl. 411.)

*Volney E. Howard*, for Respondents.

There is a sufficient part performance shown in this case to take the division out of the Statute of Frauds in equity. Julio settled, built on and improved his part. His sister settled and occupied her part of the land. Neither party, and especially Catarina, could refuse to execute the agreement without a fraud upon the other. The principle applies to a parol purchase under the Spanish law. (*Tohler* v. *Folsom*, 1 Cal. 207.)

Taking possession is such part performance. (*Arguello* v. *Edinger*, 10 Cal. 158.)

The fact that the cattle ran from one part to the other, does not affect the question of possession, especially when it is shown that Julio built houses and planted vineyards according to the division, and has resided on his part for about twenty years.

The position that there can be no homestead in land held in a tenancy in common, or joint tenancy, is an unfounded assumption, and all our decisions on that subject go on that ground. (*Wolf* v. *Fleischacker*, 5 Cal. 244.)

It is perfectly easy to ascertain the respective parts of each tenant. It is capable of mathematical ascertainment and certainty. It is a direct and palpable violation of the statute, which declares " the homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, to be selected by the owner thereof," etc. There can be no doubt as to what tract is intended. And if two or more tenants in common had built different dwelling houses on the same tract, a Court, on division, would assign to each his improvements, with an equitable division of the quality and quantity. If the land had to be sold to effect a division, the proceeds could be divided with equal facility. (*Brookfield* v. *Williams*, 1 Green's Ch. R. 341 ; *Thompson* v. *Hardman*, 6 J. Ch. R. 436 ; Wood's Digest, 202.)

By the Court, SAWYER, J.

This is an action to foreclose a mortgage executed by Julio Verdugo on the second day of January, 1861, upon the land described in the complaint. A portion of the lands were known as the " Rancho of San Rafael." The principal question in the case is, as to whether the defendants, Verdugo and wife, are entitled to have a homestead reserved from the operation of the mortgage and decree. The case was tried by the Court without a jury, and the fourth and fifth findings are as follows :

" 4. The Court also finds that, at the time of the execution

of said mortgage, the southern portion of the Rancho of San
Rafael was the residence and homestead of said Julio Verdugo
and wife and family; that said Rancho of San Rafael was
acquired by Julio Verdugo and his sister Catarina by inherit-
ance from their father, and that there was a parol division of
said Rancho of San Rafael between said Julio and Catarina
before the acquisition of California by the Government of the
United States, followed by immediate possession of their
respective portions, and continued for a long series of years
anterior to the execution of the mortgage, and for more than
ten years previous to the change of Governments. That by
said division Catarina received and possessed the upper or
northern half of the rancho, and Julio the southern or lower
half. That said Catarina resided on and held the northern
half containing the old family residence. That Julio moved
to, and built on and resided, with his wife and family, on the
southern half, where he resided with his family at the time of
the execution of the mortgage, and which was the homestead
of himself and wife at the time, under the Act of the Legisla-
ture of 1851; and that the same was duly recorded as their
homestead on the 13th day of April, 1861, in compliance with
the Act of April 28, 1860."

" 5. That there was a division of the whole mortgaged
property between Julio and Catarina in 1861; but that, as to
that portion of the property, to wit, the Rancho of San Rafael,
acquired by inheritance, it was merely a confirmation of the
ancient verbal division."

Upon these findings the Court decreed, that a homestead of
the value of five thousand dollars should be selected and set
apart. Plaintiff moved for a new trial, which was denied, and
the appeal is from the order denying the motion.

After setting out the note and mortgage, the plaintiff, in his
complaint, avers, " that at the time of the execution, delivery
and record, as aforesaid, of the said mortgage, the said mort-
gagor, Julio Verdugo, was the owner, in the tract described
in said mortgage, as tenant in common with Catarina Verdugo
—the said Julio and said Catarina each owning one undivided

one half; that after the execution, delivery and recording, as aforesaid, of the said mortgage, the said Julio Verdugo and Catarina Verdugo, on the 13th day of April, 1861, by deed of that date partitioned and divided said tract of land in the mortgage described between them." These allegations are not in any manner denied, or put in issue in any of the answers in the case. On the contrary they are in express terms substantially admitted. Defendant Julio Verdugo, in his answer avers, " that said defendant and his wife, being the owners of one half of premises in complaint described, recorded their declaration setting apart a certion portion including the dwelling house as their homestead," and the wife, Maria Jesus Verdugo, in her answer, alleges " that her husband, Julio Verdugo, being seized in fee of one half of premises as set out in said pretended mortgage, the said Julio Verdugo and this defendant, his wife, made their declaration according to law, setting apart certain portions, including their dwelling house, of said premises as their homestead," etc. They do not here aver a seizin in severalty of any particular portion of the land, but a seizin of one half of the whole, a very remarkable allegation in view of the averment of a tenancy in common in the complaint and a failure to deny that allegation, if the defendants intended at that time to rely upon a seizin of the entirety of a specific portion in severalty. There is no attempt in either answer to deny, or take issue upon any allegation of the complaint. The defendants set up, as an affirmative defense, a claim to a homestead, and rely upon the invalidity of the mortgage to the extent of the homestead value, on the ground that it was not executed by the wife. Upon the pleadings, the tenancy in common of the lands covered by the mortgage was not in issue, and the evidence to show a parol partition was irrelevant to the issues, and contrary to the facts as they stood admitted by the pleadings. But independent of this, the testimony to show a parol partition between Julio and Catarina Verdugo is extremely meagre, vague and unsatisfactory. There are two witnesses, Julian Chavis and Fernando Sepulveda, who testify, that, " for two years before the change

of Government in California, in the family of the Verdugos the northern part of the Rancho of San Rafael had been recognized and regarded as belonging to Catarina Verdugo, and the southern part as belonging to Julio Verdugo, and that the houses and gardens and other private property and peculiar improvements of each were on such respective parts." Sepulveda also testifies, that since 1843, "there has been a recognized parol division between Catarina Verdugo and Julio Verdugo, by which Catarina retained the old homestead of the family, and the upper, or northern half of the rancho, on which she has resided since 1833. That Julio took possession of the lower, or southern half of the rancho, and has, to the knowledge of the witness, resided on the same since 1843, when he had houses built by himself, a vineyard and cultivated fields. That he has heard both Catarina and Julio state that the ranch was divided and occupied as above stated since 1843; and that the division was always so recognized in the family." And on cross examination it was stated "that Julio Verdugo, the defendant, had always exercised care and control for his sister Catarina, over the northern part of the rancho as well as the southern—they both having cattle, which ranged on the whole rancho, and were all cared for by Julio Verdugo in the same manner, and no difference was made in the rodeo limits."

This is all the testimony to show a valid parol partition, and it may all be true in the general sense stated by the witnesses, and yet there be no parol partition known to the law with an intent to accomplish a division of the land, by which each should hold title to a specific part in severalty. The witnesses gave their general conclusions, without attempting to state any specific agreement or contract between the parties. If there was any definite agreement between Julio and Catarina, it does not appear in the record, and we know nothing of its terms. Whether it was for the purpose of temporary occupation, or with a view to severing their tenancy in common and vesting the title in severalty to a portion in each, does not appear. They lived, it is true, in separate houses, on different portions of the land, and cultivated sepa-

rate fields, but the other portions of the rancho appear to have been occupied in common by their cattle, all of which were under the control of Julio. Such occupation is very general among tenants in common in this State, in which a very large portion of the valuable lands are held as tenancies in common.

The testimony of the defendants as to the parol partition is of the most unreliable character. On the other hand, all the documentary evidence in the record shows that the parties themselves did not suppose they held specific portions of the rancho in question in severalty. The defendant, Julio, describes the entire rancho in his mortgage—not the southern half merely. So, also, the petition in the record to the Land Commissioners for confirmation of the grant is presented in the names of Julio and Catarina jointly, and the title is confirmed to them according to their petition as coparceners. So also in the deed of partition executed between them since the execution of the mortgage in question, there is no recital of, or reference to any prior partition, but on the contrary the deed recites: " That whereas, the said Catarina Verdugo, and Julio Verdugo do have and hold, and are seized in common and as tenants in common in equal parts of those certain tracts or parcels of land," etc., describing two tracts, one being the " Rancho of San Rafael." * * * * "And, whereas, both of said tracts of land adjoin and are connected one with the other; now, therefore, it is covenanted, granted, concluded and agreed by and between the said Catarina Verdugo and Julio Verdugo * * * * that a partition of said lands seized by them in common be made in the manner and form following," etc. In view of these facts, and the facts that stand admitted by the pleadings, it is manifest that the evidence is insufficient to support the findings.

At the time the pleadings were filed, it is evident, that the defendants did not rely upon a parol partition, for their answers are not framed upon any such theory.

That a valid parol partition might have been made under the law which prevailed in California before the adoption of

the common law, we have already held in *Long* v. *Dollarhide*, 24 Cal. 222. But agreements in relation to land resting in parol ought to be very satisfactorily proved.

Respondents insist, that the decisions to the effect that a homestead cannot be carved out of land held in joint tenancy, or by tenancy in common, are erroneous and ought to be over-ruled. It is now too late to re-investigate the reasons upon which those decisions are based. The first of the series, *Wolf* v. *Fleischacker*, 5 Cal. 244, was made nine years ago. The decision was affirmed in *Reynolds* v. *Pixley*, 6 Cal. 167 ; *Giblin* v. *Jordan*, 6 Cal. 417 ; and *Kelleisberger* v. *Kopp*, 6 Cal. 565 ; and since that time the construction of the statute upon the point involved has been regarded as settled. The parties in this case may have relied upon those decisions in dispensing with the signature of the wife to the mortgage.

The rights of Ramirez and Sepulveda, held adversely to the title mortgaged, should have been saved in the decree. (*San Francisco* v. *Lawton*, 18 Cal. 478.)

The order denying a new trial is reversed, and the cause remanded for further proceedings.