[No. 6,420.—Department No. 1.]

## LANTERMAN v. WILLIAMS.

PAROLE PARTITION OF LAND.—It is essential to the validity of a parole partition of land that it ·shall be fully executed and followed up by a several possession by the parties, or their grantees. Accordingly, a parole agreement for partition held to be void, because of such a character that it could not have been followed by such a possession as the law makes essential to its validity.

APPEAL from a judgment for the defendant, and from an order denying a new trial, in the Seventeenth District Court, County of Los Angeles. SEPULVEDA, J.

The facts are stated in the opinion.

*Barclay & Wilson*, for Appellant.

To uphold a parole partition, it must satisfactorily appear, not only that there has been an agreement to make the partition, but that the same has been fully executed and followed by a several possession by the parties or their grantees. (*Long* v. *Dollarhide*, 24 Cal. 218; *Porter* v. *Hill*, 9 Mass. 34; *Perkins* v. *Pitt*, 11 id. 125; *Gratz* v. *Gratz*, 4 Rawle, 412; Freeman on Cotenancy, etc., §§ 398, 400; 1 Wash. R. P. 685; *Gallreath* v. *Gallreath*, 5 Watts, 146; 3 Parsons on Cont. 393.)

*Will. D. Gould, James H. Blanchard*, and *J. W. Stump*, for Respondents.

The partition was valid. (*Elias* v. *Verdugo*, 27 Cal. 418; *Long* v. *Dollarhide*, 24 id. 218; *Gates* v. *Salmon*, 46 id. 361; *Wade* v. *Deray*, 50 id. 379; Civ. Code, § 1742; Code Civ. Proc. § 1971.)

ROSS, J.:

This action was brought to obtain partition of the rancho "La Cañada," situated in Los Angeles County. The plaintiff, in his complaint, after alleging that he and the defendant, A. W. Williams, are each the owner of an undivided one-half of the rancho, by virtue of a conveyance made to them by A. Glassell and A. B. Chapman, in December, 1877, proceeds, and alleges that on the 16th of December, 1875, plaintiff and Will-

iams entered into the possession of the property under a contract previously made by them with Glassell and Chapman for its purchase, and that shortly after their entry thereon they "agreed upon a partition thereof in manner following, to wit: That a line, or avenue, should be run as nearly as might be through the center of said rancho, from the easterly to the westerly ends thereof, and other lines were to run from the northerly to the southerly boundaries of said rancho, as nearly as might be, parallel with the east and west section lines of the United States surveys, extending over, or produced so as to extend across said rancho; said parallel lines to be 80 rods apart, measured along the township or section lines running through said rancho from east to west, so as to divide the entire area included between each pair of east and west section lines, prolonged as aforesaid, into four lots of equal width, extending across said ranch from north to south; these four lots, being further subdivided by the center line aforesaid, were to be numbered alternately on the northerly and southerly sides of said center line; and it was agreed by and between the said plaintiff and defendant Williams that plaintiff should have the odd-numbered lots, and the defendant the even-numbered lots thereof, as their respective shares of said rancho, to be released and quit-claimed by each to the other, respectively, with the exception of lots Nos. 15 and 18, upon which plaintiff and defendant Williams, respectively, had decided, and have since placed their residences and improvements; it being agreed between the said parties that plaintiff should have seventy-two rods of lot No. 15, and defendant Williams should take the whole of lot No 18, and the remaining eight rods of lot No. 15 aforesaid. The plaintiff, and defendant Williams, located a portion of the center line aforesaid for an avenue, and placed their improvements upon the lots aforesaid as nearly as the same could be ascertained under existing surveys."

It is then averred "that no regular, or correct, survey has been made of the subdivision, or lines, of said rancho as aforesaid"; that Williams has been, and is, engaged in disposing of various lots of land in the rancho, "and measuring them off himself as the lots to which he would be entitled under the agreement aforesaid"; that the measurements have been made

without the plaintiff's consent, and are incorrect, and that the plaintiff has requested Williams to join him in securing some competent surveyor to subdivide the rancho in accordance with the agreement, which Williams has refused to do; and the plaintiff asks that the land be partitioned in accordance with the alleged agreement, which, it is averred, can be done without injury to either party.

In his answer, Williams denies that he and the plaintiff own, or hold, the whole, or any part, of the rancho as tenants in common, or that they have any joint or common interest therein, or in any part of it. Proceeding, he alleges that prior to the making of the contract with Glassell and Chapman for the purchase of the property, he and plaintiff verbally agreed that immediately upon making the contract they would divide and partition the land equally, and would exchange deeds when they should receive title, and "that said agreement was a part of the consideration and inducement upon which the defendant Williams acted when he entered into said agreement with said plaintiff for the purchase of said rancho from said Glassell and Chapman."

The answer then sets out that immediately after the execution of the contract for the purchase of the rancho, the plaintiff, and the defendant Williams, entered into possession, "and agreed mutually between each other how, and in what manner, they would divide and partition said rancho between themselves, and reduced said agreement to writing. That said agreement is in words and figures as follows, to wit:

"This article of agreement made the 1st day of ——, A. D. 1876, between Jacob L. Lanterman and Adolph W. Williams, both of La Cañada, in the County of Los Angeles, State of California, witnesseth: That the parties have mutually purchased, and do now divide, the U. S. grant La Cañada by mutual consent and agreement, as follows: First, commencing the division of said grant by drawing a line from the grant boundary line, at a point at or near its center, to a point 80 rods east of township line between townships twelve (12) and thirteen (13) west, San Bernardino meridian, said line running north 64 degrees west; thence north 61 degrees 5 minutes west, to (or as near as practicable for a highway) its intersection line between sections 35 and 34, township 2 north, 13 west, S. B.

M.; thence to the west boundary line of said grant to a point where the section line between sections 19 and 20 of said township intersect said west boundary line; the above grant center line is to be deemed the center dievial line between the north and south half of said grant; that all lots shall face upon it; that it shall be a highway line for a road four rods wide, to be known as " Michigan Avenue "; that it is also to be, as far as practicable, the water line of said grant; that said grant is divided into forty-six lots; lot No. one being the north-east lot, and lot No. two the south-east lot; No. forty-five (45) the north-west lot, and No. forty-six the south-west lot. All are equally numbered, odd and even, on both sides of the avenue. That all the odd-numbered lots are Dr. J. L. Lanterman's, and that all the even-numbered lots are A. W. Williams's; that lot No. fifteen (15) is seventy-two (72) rods east and west in width, and lot number eighteen (18) is eighty-eight (88) rods in width east and west. That lot eighteen has equal rights in the waters of lot (15) fifteen, and equal duties and rights of way to spring, to repair, husband, and carry one-half ($\frac{1}{2}$) of said waters. That all waters (save those wells dug by parties on their own lots,) that can be found on said grant, procured for it, or conveyed on it, are of equal rights, interest, and duties. That all highways, and roads, on said grant are of equal duties; that for the purpose of taxation the grant remains, as at present, taxable in a body; each party, or their representatives, to pay one-half ($\frac{1}{2}$) of the entire assessment, taxes, or other legal charges. That all lots (save the six above referred to, viz., 1, 2, 15, 18, 45, and 46) are 80 rods wide east and west, and all face on the avenue, and are all bounded by said center line, and the grant line on the north and south, and east and west by north and south township, section, quarter-section, or half quarter-section lines, adopting for said north and south lines only the posts now found on said grant, established by Mr. Norway; but expressly rejecting and protesting to said Norway's grant lines as false and nonconformable to U. S. patent for said grant. That when a deed is taken by us, or our representatives, either by payment in full for said grant, or by partial payment and mortgage, we will, and our representatives shall, deed to the other freely and fully their interest by original purchase to all those lots belong-

ing by the above agreement to either party, and that so long as we have mutual rights and interests in said grant we will, with God's help, deal kindly and justly each with the other.

"In witness whereof, we have hereunto set our hands and seals, date and place first above written.

"A. W. WILLIAMS. [Seal.]"

The next averment of the answer is, that the plaintiff *refused to execute* this agreement, and it is then alleged, that immediately after taking possession of the land, plaintiff, and defendant Williams, commenced the division pursuant to their agreement, and actually and completely partitioned it, and "that a map was made correctly representing said division and partition into lots of said rancho as actually made and agreed upon by the plaintiff and the defendant Williams," and that actual possession was taken by the respective parties of their respective portions. A cross-complaint was filed by the defendants, containing substantially the same averments as are found in the answer, and the defendants asked that the Court by its decree " confirm the division and partition of said rancho as actually made by the plaintiff and the defendant Williams, in accordance with said contract as above particularly set forth "; that the Court decree that the map referred to is a correct representation of the grant as partitioned by and between the plaintiff and Williams, and that it be made a matter of record; that the plaintiff be compelled to execute to Williams a good and sufficient deed for all the even-numbered lots marked upon the map; that the plaintiff be compelled " to disclose what waters he has discovered and found upon said grant, and procured for it, and allow the defendant Williams an equal right and interest thereto, upon his performance of the conditions imposed in said contract; that whatever waters may be found on said grant, procured for it, or conveyed on it, by either plaintiff or said defendant Williams, be decreed by this Honorable Court to be for their equal right and interest, upon their performing the conditions in said contract set forth "; and the Court below so decreed, and also gave defendant judgment for attorney's fees in this action, and for one hundred dollars damages for plaintiff's failure to deed to the defendant the even-numbered lots.

The decree cannot be sustained for several reasons, but it will be sufficient to state one.

The plaintiff and Williams made the contract for the purchase of the rancho on the 16th of December, 1875, and went into immediate possession. The title was conveyed to them in December, 1877. The agreement between them for the partition of the land was a parole agreement, for both the answer and cross-complaint expressly allege that the written contract therein set out was never executed by the plaintiff, but that, on the contrary, he refused to execute it. The parole agreement for the partition was clearly invalid. All of the evidence shows an absence of the essential requirements to a valid partition of that character. Williams himself testified: "The map of partition was made in the month of December, 1875, and January, 1876. The agreement of partition was made at indefinite periods between the time of the purchase and March 1st, 1876. I give you the outside limits. It was made at different times, and from different sections of the agreement, which have all to be discussed. I cannot tell when it was finally made, but it was completed before the last of February, 1876.   *   *   *   All of the subdivision lines of the lots marked on the map have not been surveyed. Every lot which lines upon the avenue has been surveyed. The avenue has not been surveyed through, but all the practical part of the grant, the east half, from the mountain to the Arroyo Seco, was. There are two or three miles there that has been surveyed; some portions of it remained unopened, but the Doctor's flags remained standing. I should think three miles of the avenue has never been run west. It is impossible for you to locate every one of those lots without an instrument. I could take the stakes and lines, and locate every one of them. I should do it by triangulation. The lines of those lots are not marked on the ground. Some are, and some are not. At the time my deposition was taken I said I could find twenty-three lots readily without the use of an instrument. I could find every one without the use of an instrument. With a board and thread I could find them by triangulation. I only know where twenty-three are that I have been on. I know where they are by sight, and triangulation, and surveying, by running various lines.   *   *   *   Q.—Does the Doctor (plaintiff) know where his lots are? A.—His sources of knowledge are equal to mine. I did n't say when

my deposition was taken that no one else could find them unless they had my full notes. I said most any one else could find them. By the aid of the field-notes any surveyor could find them, even if these lines were obliterated. If Mr. Norway's posts were gone, he could go to my field-notes and restore them. * * * Q.—Have you any knowledge as a surveyor? A.—Such as I might have acquired by a military education in part, and some practice of it in the field. Some practice before marriage, but none since, except in the army. * * * Q.—You have studied surveying? A.—Yes, sir; I can tell whether my instrument varies by taking an observation of the astra polaris, or perhaps any other star, and I can tell whether my instrument is in order, and I can tell when any magnetic variations occur—how much it would be. I can tell when there is local attraction."

The foregoing is only a portion of the testimony of the defendant Williams, who made the map referred to, but it is enough to show beyond all question that the agreement for the partition could not have been followed by such possession as the law makes essential to its validity. Many of the lots were never marked or located upon the ground at all, and neither of the parties could with certainty know where they were. Under such circumstances it is perfectly obvious that a separate and distinct possession by either party was an impossibility. We have no doubt of the invalidity of the alleged parole partition. (*Elias* v. *Verdugo*, 27 Cal. 421; *Long* v. *Dollarhide*, 24 id. 218; Freeman on Cotenancy and Part. § 398.)

There seems, however, to have been no necessity for this litigation. There appears to be very little, if any, difference respecting the wishes of the parties in the division of the land; and a survey sufficient to render certain the respective tracts might doubtless have been made, and deeds exchanged, for much less than the cost of the litigation. If, however, the parties are unwilling or unable to agree upon a division, the Court must divide it for them, and make such partition as to it may seem equitable and just.

Judgment and order reversed, and cause remanded for a new trial.

MORRISON, C. J., and McKINSTRY, J., concurred.