REYNOLDS *et al. v.* PIXLEY. *et al.*

6 165
110 203

Land held in joint tenancy is not subject to dedication for homestead purposes; and where the joint tenants make partition, the character of homestead cannot be attached to any portion of it, by occupancy as a dwelling place, prior to the partition.

On partition, each of the joint tenants receives his portion, subject to the general rules that govern the acquisition of real estate, and if there was no residence after partition of the land, and before claims in suit had become legal charges thereon, it cannot be exempted as a homestead.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

This was an action to foreclose a mortgage, made by the defendant, Pixley, alone, in September, 1854, on a certain lot in Marysville; and making prior and subsequent encumbrancers parties. The finding of the referee appointed in this case, which is confirmed by the Court, shows that the defendant, S. Pixley, and one Teed, purchased the lot, of which the mortgaged premises form a part, in 1853, and that defendant, S. Pixley, and his wife, resided on the premises thus held in joint tenancy till May, 1854, when the building was destroyed by fire; that in July, 1854, Pixley and Teed made partition of the lot, by which the mortgaged premises were conveyed to Pixley; that at the same time, Pixley contracted for the erection of a brick building, which was erected and used for stores, offices, etc.; that Pixley and his wife did not reside on the premises from that time until November, 1854, when they occupied some rooms in the second story of the building, before which time the liens of the various encumbrancers in dispute had attached. The Court decreed a foreclosure, and the payment of the liens from the proceeds. Defendants, Pixley and wife, appealed. Before appeal taken, the sheriff, under an order of sale issued under the decree, had sold the premises, and distributed the proceeds according to the terms of the deree.

*C. H. Bryan* for Appellants.

1. It is a maxim of the law that *remedial statutes* must be construed to *advance the remedy.* 1 Kent, pp. 464 and 465; note (a).

2. Even a *change of residence* will not deprive a family of the benefits of the "Homestead Act." Taylor *v.* Hargous, 4 Cal. R., 273. How much stronger, then, is this case, where there is *no change of residence?* The wife is without a home on account of the calamity of fire. She comes back and goes into this building, upon property where she resided before with her husband, and remains there ever since. She *has no other home;* and the effect of an affirmance of the decree would be to deny the family the benefits of the Act. It certainly can be *no less a home* if the family are residing in a building which is devoted to business purposes. In Cook *v.* McChristian, 4 Cal. R., 26, the Court hold that the homestead is the *residence of the family.* Then, if Pixley and wife *have resided constantly* there, does it not follow from

that opinion that *it is their homestead?* Would it not be overruling that case to hold differently? In Bailey Sargent *v.* Wilson et al., decided at the October term, 1855, the Court intimate that the amount of $5000 in that case should be reserved. In that case, Wilson's wife claims a homestead in a tavern, kept by Wilson, in San Francisco. If a tavern is liable to a homestead reservation, certainly the building here is.

The Act was passed under an express injunction of the Constitution, for a highly generous and humane purpose. Every construction of the Act should be indulgent, where the rights of families are concerned.

If the judgment be affirmed, the family is certainly deprived of a home, for they have no other, and it cannot be denied that they once resided there, and *now reside there.*

*Stephen J. Field* for Respondents.

The premises described in the complaint did not become the homestead of Pixley and his wife, if ever, until after the liens, which were paid by the proceeds of the sale, had attached.

1. Until July, 1854, the premises were owned jointly by Pixley and Teed, and whilst thus held in joint tenancy, no homestead out of them could be set apart by either Pixley or Teed. Davis and Wolf *v.* Fleishacker, July T., 1855.

2. Subsequent to the partition of the premises, not a single act was done to indicate any intention whatever of occupying the premises as a residence, or even claiming them, until weeks after every lien, which was paid by the proceeds of sale, had attached. The building was not constructed for a dwelling house, but for a store, offices, etc.

3. In order to set apart any premises as a homestead, some act must be done, or declaration made, by the party claiming the homestead, indicating an intention to hold the premises as such ; and such act must be done, or declaration made, whilst the premises are in a condition to be set apart as a homestead. The construction of a *dwelling house* would be a sufficient indication previous to occupancy, and occupancy itself would be presumptive evidence of a selection. But a person, by simply moving his family into some rooms over a store or a livery stable, cannot change the building into a homestead, so as to have his claim date back to the commencement of its construction. Some act or declaration is necessary to change the character of a building not originally intended or constructed for a dwelling.

The opinion of the Court was delivered by Mr. Chief Justice Murray. Mr. Justice Terry concurred.

The record in this case shows that the premises in question were formerly held by appellant as joint tenants, together with one Teed, and that the appellant lived on a portion of said lot with his family, until his residence was destroyed by fire. Afterwards he boarded with his family at a hotel in the city of Marysville. After the fire. the appellant and Teed divided said lot, and he (the appellant) proceeded to erect

upon the half formerly occupied by him, a building, designed for stores and offices, and executed several mortgages upon the lot for materials and money to erect said building. Some time after the erection of the house, he and his wife occupied several of the rooms on the second story, and now seek to maintain a right of homestead in the premises.

In Davis and Wolf v. Fleishacker, 5 Cal., we decided, that lands held in joint tenancy were not subject to dedication for homestead purposes. Under that decision (the soundness of which we are not disposed to question) the appellant, though living upon the land, was not entitled to a homestead. After the partition of the lot between himself and co-tenants, it became his, subject to the general rules that govern the acquisition of real estate, and its character was not influenced or changed by relation to prior occupancy as a dwelling place; for that which the law would not tolerate in the first instance, could not be effected by the act of the party. As to the second building, it is shown that it was not even erected for a dwelling house, but for a different purpose, and that it was not occupied as a residence until after the liens and mortgages had accrued.

In Cook v. McChristian, 4 Cal., it was held that in the absence of statute regulations requiring recordation of homestead claims, residence was the test by which the fact of dedication was to be determined. Squaring this case by that decision, there was no residence qualifying the possession up to the time of the destruction of the building by fire, and none afterwards until the claims now in suit had been contracted, and became a legal charge upon the property.

Before leaving this case, we feel constrained to express our regret that the Legislature has failed to provide that notice of homestead should in all cases be recorded. Such a law would do away with all the difficulties which now embarrass these rights, and be found a wise and salutary barrier against deceit and dishonesty. As the law now stands, so far from accomplishing the end designed, it is a fruitful source of fraud and perjury, and will eventually lead to more mischief then all the other difficulties which embarrass real property in this State. These rights are so illy defined, that it is almost impossible for human foresight to detect or guard against them; and much of the property of this State, which has passed through many hands, will eventually be found encumbered to its full value with these unrecorded liens.

Judgment affirmed.