## BISHOP v. HUBBARD et al.

A & B were partners, and as such, owned two tracts of land. A for several years had resided upon one of the tracts with his family, using it as a homestead. The firm becoming embarrassed, they made a division of their lands, and B executed to A a deed of his interest in the homestead tract; and A executed to B a deed of his interest in the other tract. These deeds were executed for the purpose of enabling A to file a declaration of homestead on the tract deeded to him, and thereby preventing the creditors from selling it in payment of their debts. A soon after, executed and recorded a declaration of homestead on the land:

*Held*, that the conveyances were fraudulent and void as to creditors; and that, notwithstanding the homestead claim, the land was still liable for the debts of the firm.

Where a partnership, in embarrassed circumstances, converts its means, upon the strength of which it has obtained credit, into real estate, to be claimed as a homestead by one of the firm, for the purpose of placing those means beyond the reach of the creditors, the land is liable to the executions of the creditors, notwithstanding the declaration of homestead.

APPEAL from the District Court, Eleventh Judicial District, Placer County.

Bishop & Long were general partners, and had been for several years engaged in ranching, and raising, buying, and selling sheep and cattle. They owned two tracts of land which had been acquired with the partnership funds. Their circumstances had become embarrassed, and their creditors were pressing them. On the twentieth day of May, 1861, they made a division of their real estate, and executed mutual deeds. Bishop had been residing on one of the tracts for several years with his family, and in the division this tract fell to Bishop, who on the same day executed and recorded thereon a declaration of homestead. The deed and declaration of homestead were both recorded on the same day. Two days afterwards, the creditors commenced suits against the firm, and among other property, attached the land claimed by Bishop as a homestead. Judgments were rendered in the actions by default; and on the fourth of June thereafter, executions were issued on the judgments, and the property claimed as a homestead advertised for sale. Bishop filed a bill in equity to enjoin the sale, claiming that the same would create a cloud upon his title. Defendants set up in their answer that the sale from Long to Bishop was a fraud

upon the creditors, and asked that the deed be canceled.    The question of fraud was submitted to a jury, who found that the sale was fraudulent.  · The Court thereupon rendered judgment for defendants, and also ,canceling and annulling the deed from Long to Bishop.

*Hale & Smith* and *Hereford & Williams*, for Appellant.

Bishop & Long were each liable upon all of the judgments to their full amount, and it was impossible for the conveyance from Long to Bishop to operate as a hindrance to the defendants in the enforcement of their judgments, because the property was as much and as completely liable after the conveyance as before.    Until Bishop withdrew the property from its liability to execution by his declaration of homestead, the defendants' right to execute it was as perfect as when it belonged to the firm of Bishop & Long.

The case is very different from that of a conveyance to a third party, or one who is not liable for the debts, because in the latter case the conveyance operates as a withdrawal of the property from its liability to execution; while, as we have shown before, a conveyance from one debtor to his joint debtor has no such effect. The only effect of the latter conveyance, is to change the title of the property as between the debtors.

If correct in our conclusions upon this proposition, we compel the defendants (respondents) to sustain the charge of fraud to the effect that the declaration of homestead was fraudulent in law, or their case falls.

We have examined the question with some care, and have not been able to find a case where the act of claiming property as exempt from execution has been held fraudulent, because done to hinder and delay creditors.    And we cannot conceive it possible for any Court to so hold.    On the contrary, instead of making it fraudulent, the law contemplates that the creditor will by his action delay his creditors.    It authorizes him to do 'so, and makes his acts lawful, instead of declaring them void.

Every claim of exemption of property from execution sale, operates as a delay of the creditor that far.    And the effect of such claim in fact, so far as the creditor is concerned, is precisely the

same as that of a sale of the property to a third party to avoid the debt. But the effect or consequence in law is very different, because in the former instance the law declares the act valid and legitimate under all circumstances, while in the latter it declares it void. The only case in our reports having any bearing upon the question under discussion which we have been able to find, is that of *Randall* v. *Buffington* (10 Cal. 491). In that case, this Court held, that where an insolvent sold goods liable to execution, and applied the proceeds to the relief of his homestead by discharging a mortgage resting upon it, the transaction was not liable to impeachment for fraud in delaying creditors. In other words, that the act of relieving the homestead, so as to exempt it entirely from execution or from the reach of creditors, was not fraudulent.

*S. Heydenfeldt*, for Respondents.

It may be considered well established, that fraud in the transmutation of partnership property from one partner to another, will not prevail as against the creditors. In *Ex Parte Ruffin* (6 Ves. 125), although the circumstances did not call for an expressive decision of the points, yet the remarks of Lord Elden, in his opinion, make it clear that such was his understanding. On page 127 he says: "A *bona fide* transmutation of the property binds the creditors." "When the effect is a *bona fide* transaction of this sort, it would be much better to examine the *bona fides* of each transaction than," etc.

From these quotations it appears evident, that a partition or sale among partners of partnership effects, is not free from inquiry into the good faith of the transaction; and if it lacks this essential quality it will, like all other fraudulent acts, be void.

In *Anderson* v. *Maltby* (2 Vesey, Jr. 245), a retiring partner withdrawing funds as for his share, was declared fraudulent, and compelled to account. There must be a fair transmutation of the partnership property by the outgoing partner to the remaining partner, to enable the joint property of the firm to become the separate property of the remaining partner. (1 Montagu on B. L. 408.)

In *Yale* v. *Yale* (13 Conn. 190), the Court emphatically decide that an appropriation of the joint property by one partner to pay

Bishop *v.* Hubbard.

his individual debt, would be fraudulent and void as against the partnership creditors.

The plaintiff says it is no fraud to dedicate a homestead. This proposition nakedly and abstractly we admit. So also, nakedly and abstractly, it is no fraud to pay a private debt. But here, the fraud consists in appropriating the partnership property; and it must be equally fraudulent, whether it be done for the one purpose or the other, or for any purpose which defeats the partnership creditors.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

Bishop & Long were partners engaged in an extensive business, and as such owned the tract of land in controversy, on which is a dwelling-house, the house and land having been occupied by Bishop, with his family, as their homestead for several years. Becoming embarrassed, they made a division of their real estate, and executed mutual deeds to each other under it, by which the title to this property became vested in Bishop, who duly filed and had recorded his declaration of homestead. The defendants are creditors of Bishop & Long, and as such obtained judgments on their debts and levied upon the property. Bishop then brought this action, claiming the property as a homestead, and therefore not liable to sale on execution, and prayed for an injunction to restrain the defendants from selling it under their executions. The defendants contend that the division of the property between the partners was a fraud upon them as creditors, and therefore void as to them; that the property is still partnership property, and as such liable to the judgment of their debts, which cannot be defeated by the claim of homestead. The case was tried by a jury, who found a verdict for the defendants, upon which a judgment was duly rendered against the plaintiff, from which he appeals.

It has been repeatedly decided by this Court, that a homestead could not be established upon property held in joint tenancy, or tenancy in common. ( *Wolf* v. *Fleishacker*, 5 Cal. 245; *Reynolds* v. *Pixley*, 6 Id. 236; *Gibbin* v. *Jourdon*, Id. 147; *Kellersberger* v. *Copp*, Id. 565.) It follows that while the debtors owned the prop-

erty as tenants in common, it was liable for their partnership debts; and the fact that it had been and was occupied by one of them as a homestead, would not have affected that liability.

In the case of *Riddell* v. *Shirley* (5 Cal. 488), a debtor in embarrassed circumstances made a sale of certain personal property for the purpose of raising funds with which to discharge certain debts, which were a lien upon his homestead, for the purpose of saving it to himself—of all which the purchaser had full knowledge at the time of his purchase. It was held that it was a transaction calculated to hinder, delay, or defraud creditors, and therefore the property was liable, in the hands of the purchaser, for the debts of his vendor. The Court say: "Although the law secures the homestead from execution arising from ordinary indebtedness, it is yet made chargeable for debts by the acts of the parties interested in its preservation, and in some cases by operation of law. Where such cases exist, it would seem to be only fair that the homestead should remain answerable for the debts charged upon it, and not, after becoming a source of credit, be relieved, intentionally, by the disposition of all the other property of the debtor, leaving nothing for the satisfaction of the other creditors." So in the present case, the land in question, before the division, was chargeable with the debts of the partnership by operation of law, and it was a source of credit to the parties while it remained in that condition; and it would not seem just and right that the debtors, after having thus obtained credit thereon, should, by their own act, without the consent of their creditors, place it beyond the reach of such creditors, who may have dealt with them on the faith of the liability of this property to be applied in payment of their just debts. The conveyance from Long to Bishop was a means of placing the property in a situation by which it might be put beyond the reach of the creditors; and if done for that purpose the jury were justified in finding that it was made for the purpose of hindering, delaying, or defrauding creditors, and therefore void.

The case of *Randall* v. *Buffington* (10 Cal. 491), referred to by the appellant, differs from the case of *Riddell* v. *Shirley* and the present, in this, that there the insolvent debtor paid money in his hands in discharge of a debt which was an incumbrance upon

his homestead, and the Court held it to be valid, because "there is no rule of law which prevents a debtor in insolvent circumstances from the application of his property to the payment of one debt rather than another." In that case there was no assignment or conveyance to be held void for fraud. In the case of *Riddell* v. *Shirley*, and the present, there were conveyances made of property, the effects of which were, directly or indirectly, to put property beyond the reach of creditors. The question whether the conveyance in this case, from Long to Bishop, was made with the intent to hinder, delay, and defraud creditors, seems to have been fairly submitted to the jury, and we see no good reason for disturbing their verdict.

The judgment is therefore affirmed.