[No. 8024.—In Bank.]
July 27, 1882.

FIRST NATIONAL BANK OF SANTA BARBARA et AL. *v.* C. S. DE LA GUERRA et al.

Homestead—Adverse Possession—Statute of Limitations—Husband and Wife.—In April, 1861, the defendant, Concepcion de la Guerra, a married woman, filed a declaration of homestead upon a tract of land then inclosed and occupied by herself and husband, but which formed part of a large tract owned by her husband and others as tenants in common; and from that date occupied the land with her husband, claiming it as a homestead, until his death in January, 1878, and afterwards by herself until the beginning of this action. After the declaration of homestead, her husband and his co-tenants mortgaged the larger tract to one C., and the mortgage having been foreclosed, C. became the purchaser of the mortgaged premises and received his deed. Subsequently, in January, 1873, the interests of C. in the homestead premises, by proper mesne conveyances, became again vested in the husband of Concepcion and another of the original co-tenants, and was by them subsequently mortgaged, and under judgment of foreclosure sold and conveyed to the plaintiffs. In an action to quiet title, to which Concepcion was made a party, the court below found that the homestead premises had been held adversely by her from the date of the filing of the homestead.

*Held:* The declaration of homestead filed by Concepcion was invalid because the premises were then held by tenancy in common. The finding as to adverse possession can not avail her. It was by virtue of her marital relations with her husband that she filed a declaration and has continued to claim the premises as a homestead. There is no pretense that her husband claimed adversely to any one, and she could not claim ad-

versely to him, or those holding under him, so long as he remained as the head of the family, which he did until his death. The declaration of a homestead was not validated by the Act of March 19, 1868. There was no interest on which the provisions of the Act could operate—the interest of her husband having previously passed from him to C. under the foreclosure proceedings.

APPEAL from a judgment for the defendants, and from an order denying a new trial, in the Superior Court of the County of Ventura. HINES, J.

*Richards & Boyce, Bledsoe & McKeeby*, for Appellants.

The law makes the residence of the husband that of the wife. (Pol. C., § 52, Subd. 5; *Guiod* v. *Guiod*, 14 Cal. 506; Civ. C., § 156.) She could not, being a *feme covert*, hold adversely to her husband, or any one holding title superior to his. (*Frink* v. *Alsip*, 49 Cal. 103.) The pretended declaration of homestead is absolutely void, as the premises were held in tenancy in common. (*Elias* v. *Verdugo*, 27 Cal. 418; *Seaton* v. *Son*, 32 id. 481; *Cameto* v. *Dupuy*, 47 id. 79; *Roussett* v. *Green*, 54 id. 136.) The Curative Act of 1868 breathes no life into the abortive homestead.

Defendant was not in the exclusive occupation of the premises and residing thereon on March 9, 1868, when the Act went into effect. Francisco was no longer owner of an undivided or any interest or estate in or claim against the premises. Long before the Act went into effect, the birthright had been mortgaged and sold, and had vested in strange owners, and no statute can take away vested rights. (Freeman on Void Judicial Sales, Sec. 59.)

*Blackstock & Shepherd*, for Respondent.

Francisco and his wife, under the homestead, held adversely to them, and remained continuously in possession for more than five years subsequently. This adverse possession perfected their title as against Cook and his grantees. (*Cannon* v. *Stockmon*, 36 Cal. 535.) On the twenty-ninth of April, 1861, Francisco de la Guerra was in the exclusive occupation of lands which plaintiffs insist were devised to Francisco and his three brothers, and which they say was held in tenancy in common. Let us for argument's sake admit the validity

of the Cook foreclosure proceedings, and that the lands were held in tenancy in common. Cook's title and claim was extinguished by adverse possession and title vested in Francisco to the Cañada de Tapo. (*Arrington* v. *Liscom,* 34 Cal. 371.)

By filing the declaration Mrs. de la Guerra indicated her intention to make the land her homestead, and if she afterwards acquired an outstanding title it attached itself to the homestead already acquired under the Act of 1860 and 1868, and perfected the homestead right. (*Spencer* v. *Geissman,* 37 Cal. 100; *Hihn* v. *Shelby,* 16 P. C. L. J. 739; *Brooks* v. *Hyde,* 37 Cal. 366.)

The Court:

Judgment and order reversed, for the reasons stated in the opinion heretofore filed herein by Department One.

The following is the opinion of Department One, together with the dissenting opinion of McKee, J.:

The Court:

The plaintiffs are entitled to recover possession of the premises in controversy, unless the homestead claim of the defendant, Concepcion de la Guerra, is a valid one, or unless the adverse possession which the Court below found she has held of the premises constitutes a bar to such recovery.

The premises, which are known as the Cañada de Tapo, form a part of the Simi Rancho, situated in Santa Barbara County. This rancho was, at the time of his death, which occurred in February, 1858, the property of José de la Guerra y Noriega. Noriega left surviving him four sons—Pablo, Francisco, Antonio Maria, and Miguel de la Guerra. In 1861 these sons were tenants in common of undivided interests in the rancho (whether as devisees or heirs-at-law is immaterial), and the defendant, Concepcion, was then the wife of Francisco. On the twenty-ninth of April of that year, Concepcion filed in due form a declaration of homestead on the Cañada de Tapo, but the declaration so filed was invalid because the premises were then held by tenancy in common. (*Cameto* v. *Dupuy,* 47 Cal. 80; *Elias* v. *Verdugo,* 27 id. 418; *Seaton*

v. *Son*, 32 id. 481 ; *Wolf* v. *Fleischacker*, 5 id. 244; *Reynolds* v. *Pixley*, 6 id. 165.)

Subsequent to the filing of the declaration of homestead, to wit, in May, 1861, Pablo, Francisco, Antonio Maria, and Miguel de la Guerra executed to one Cook a mortgage on all their right, title, and interest in the Simi Rancho, to secure certain indebtedness due him ; and on the sixteenth of October, 1861, they executed to one Oreña a deed for all their right, title, and interest therein, which deed was absolute on its face, but was intended as a mortgage to secure certain indebtedness due Oreña. The indebtedness to Cook not having been paid, Cook commenced an action to foreclose his mortgage, to which Oreña was made a party, and which action resulted in the entry, on the seventeenth of November, 1863, of a judgment for the plaintiff, directing, among other things, the sale of the mortgaged property, or so much thereof as should be necessary to satisfy the judgment. Under this judgment the Simi Rancho was sold to Cook, and on October 6, 1864, he received the sheriff's deed therefor.

The interest of Cook in that portion of the rancho comprising the premises in controversy subsequently, and prior to the year 1873, vested in Eugene L. Sullivan; and these premises, Sullivan, on the fourteenth of January, 1873, conveyed to· Francisco de la Guerra and Antonio Maria de la Guerra. October 25, 1875, Antonio Maria mortgaged his interest therein to one Ruiz to secure the sum of two thousand seven hundred dollars, and on the eighteenth of July, 1876, Francisco mortgaged his interest therein to the plaintiffs, Einstein and Bernheim, to secure the sum of four thousand eight hundred and thirty-seven dollars. The Ruiz mortgage was subsequently foreclosed, and under the decree of foreclosure the interest of Antonio Maria in the premises in controversy was sold to Ruiz, who afterwards assigned his certificates of purchase to the plaintiff, the First National Gold Bank of Santa Barbara, which latter received, on October 9, 1878, from the Sheriff, a deed conveying to it the interest of Antonio Maria de la Guerra in the said premises. The mortgage given by Francisco was also foreclosed, and under the decree of foreclosure the interest of Francisco was sold to the plaintiffs Einstein and Bernheim, who, on January 27, 1879,

received from the Sheriff a deed conveying to them the interest of Francisco de la Guerra in the premises in controversy.

During all this time the Court below found the defendant, Concepcion, was with her husband and family, in the actual and exclusive occupation of the Cañada de Tapo, claiming the same as her homestead, and was in such actual and exclusive occupation at the time of, and for a long time prior to the filing by her of the declaration of homestead, and that the said premises were, during all the said times, inclosed.

The Court below further found "that from and since the twenty-ninth day of April, 1861 (the date of filing the declaration of homestead), defendant Concepcion S. de la Guerra has resided with her family upon said tract or place called 'Tapo,' and continuously during all that time has held, and now holds open, notorious, exclusive, adverse possession thereof." But it is evident that this last finding can not avail her. It was by virtue of her marital relations with her husband that she filed the declaration in 1861, and has continued to claim the premises as a homestead. There is no pretense that her husband claimed adversely to any one, and she could not claim adversely to him or to those holding under him so long as he remained the head of the family, which he did until his death, subsequent to July 18, 1876.

As has already been said, the declaration of homestead was invalid when it was filed. But it is claimed that it was validated by the Act of the Legislature, approved March 9, 1868. The first and second sections of that Act are;

"Section 1. Whenever any party entitled to a homestead under the laws of this State, shall be in exclusive occupation of any parcel or tract of land, having the same inclosed, and shall select and record and reside upon the same as a homestead, such party so selecting and claiming shall be entitled to such homestead, and to all rights and exemptions provided by the general law relating to homesteads, to the extent of such claimant's interest in such homestead property, although such land be held in joint tenancy, or tenancy in common, or such claimant own only an undivided interest therein.

"Sec. 2. This Act shall apply to all homesteads heretofore

recorded under the laws of this State, as well as those that may hereafter be acquired; *provided*, that the provisions of this Act shall not apply to any actions now commenced and pending in any Court of this State, so as to require any of the parties claiming homesteads under the provisions of this Act to be made parties in such pending suits."

It is impossible to perceive what application this Act has to this case; for long prior to its adoption all of the right, title, and interest of Francisco de la Guerra in the premises had passed from him to Cook under the foreclosure proceedings. There was no interest, therefore, on which the provisions of the Act could operate. We discover no ground on which the alleged homestead can be sustained.

Judgment and order reversed and cause remanded for a new trial.

McKEE, J., dissenting:

I dissent. It appears by the finding of the Court below that prior to April 29, 1861, Francisco de la Guerra and Concepcion, his wife, resided upon the premises in dispute, having the same inclosed; and, being thus in possession of the land as the family residence, the wife, on that day, for the purpose of securing to herself and family the benefit of the homestead law which was then in force, filed in due form a declaration of homestead, by which she selected and claimed the premises as a homestead. But the only title to the land was the title of the husband, Francisco, and *that* he held as a tenant in common with his brothers, as heirs-at-law or devisees of their deceased father, Jose de la Guerra y Noriega, who had died seised and possessed of the Simi Ranch, of which the homestead premises formed a part; and the Supreme Court in a number of cases had decided that under the homestead law, as it existed at the time of filing the declaration by the wife of Francisco, a homestead could not be carved out of land held in joint tenancy or by tenancy in common. The homestead claim of the defendants was, therefore, under those decisions invalid.

But, after the rendition of those decisions, the Legislature of the State, by an Act entitled "An Act relating to Home-

steads," approved March 9, 1868, enacted that persons residing upon and in the exclusive occupation of an inclosed tract of land which had been selected by them, and recorded as a homestead, were entitled to hold it as a homestead to the extent of their interest in the land, whether their interest was that of a joint tenant or tenant in common, or any other undivided interest. And the provisions of the statute were, by its terms, made applicable to *all* homesteads recorded before the passage of the Act, under pre-existing statutes—provided, that the rights of persons to said land who had actions pending in any of the courts of this State were not to be affected by any of the provisions of the Act. (Sections 1 and 2, Act of 1868, p. 116.)

At the time of the passage of that Act the homestead claimants resided upon and claimed the premises as their homestead. No proceedings were pending affecting the land in any of the Courts of the State. The Act of 1868, therefore, covered and validated the homestead claim of the defendants. But before the passage of the Act of 1868, Francisco and the other heirs-at-law of Noriega had mortgaged their interests in the *Simi* Ranch to secure an indebtedness to one Cook, who, in 1864, had acquired title to the mortgage premises at a sale under the decree of foreclosure. But the homestead claim of the defendants was never challenged or disturbed by that title. On the contrary, the claimants continued in adverse possession of the premises, claiming their homestead therein. And, in January, 1873, they acquired the title by purchase from the grantee of Cook. The acquisition of that title certainly did not invalidate the homestead right if it existed under the statute of 1868. It did exist under that statute, because it did not depend upon the character of the title held by the party claiming it, but was valid to the extent of the interest which the claimants had in the land, although that interest was nothing more than possession (*Spencer* v. *Geissman*, 37 Cal. 96); and the acquisition of the outstanding title to the land, instead of weakening the right, strengthened and confirmed it

As, therefore, there was a valid subsisting homestead right before and after the acquisition of the Cook title to the home-

stead premises, it was not subject to the mortgages executed in 1875 and 1876, under which the plaintiffs in the case claim title. I am, therefore, of the opinion that the judgment of the Court below should be affirmed.