**In re MILLER.**

**No. 33214–M.**

District Court, S. D. California, Central Division.

June 20, 1939.

Benshoof & McGuire, of Riverside, Cal., by C. W. Benshoof, of Riverside, Cal., for bankrupt.

R. B. Turnbull and W. A. Perilmuter, both of Los Angeles, Cal., for creditor J. G. Walters and trustee in bankruptcy.

McCORMICK, District Judge.

This is a review of a referee's order relating to a homestead exemption to the bankrupt.

The essential facts disclosed by the certificate of the referee and the documents transmitted therewith are as follows:

The bankrupt, True Miller, is now and has been at all times involved in this matter the husband of Eva Miller. They have together resided upon the real property which is the subject matter of this review since its acquisition by them, and do now continue to reside thereon. The property is described as follows: "Lot 14 of Madison Park as shown on file in Book 14, pages 82 and 83 of Maps, Records of Riverside County, California, together with (2) shares of stock in the Riverside Water Company." Its value is now and has been throughout less than $5,000. It was acquired by purchase by the Millers jointly on May 21, 1927, through the medium of a valid joint tenancy deed of that date. Subsequently, and on August 31, 1932, Miller, as husband and the head of a family, duly made, verified and recorded a declaration of homestead under the laws of the state of California upon the aforesaid property. This is the only declaration of homestead executed by either the husband or the wife.

In the schedules annexed to the voluntary petition the bankrupt lists the real property as community property and alleges the property to be of a value of $4,250, and claims it to be exempt under § 6 of the Bankruptcy Act of 1938 (Title 11, § 24, U.S.C.A.) and pursuant to §§ 1237 to 1266 of the Civil Code of the State of California.

The trustee in bankruptcy filed his report of exempt property claimed by the bankrupt wherein he objected to the setting aside of the aforesaid real property as a homestead, "for the reason that the bankrupt did not comply with the laws of the state of California on homesteads."

Upon exceptions filed by the bankrupt and also by the wife, who is also a voluntary bankrupt and who asserts and schedules the same claim to homestead

exemption as her husband, a hearing was held by the referee wherein it was conceded "that the declaration of homestead created a valid exemption as to the undivided one-half interest in said property conveyed to the husband as joint tenant."

The referee, upon objections by a creditor, excluded proffered oral testimony by Mr. and Mrs. Miller that the property "was purchased with community funds" and also to the effect that while the deed "is joint tenancy in form, there was no intent to disturb or change the community character of the property," and entered the order here under review, which allowed and set apart to the bankrupt homestead exemption "from and only the undivided one-half interest in said land and water stock conveyed to said True Miller by said deed," and which decreed that by reason of the omission and failure of Mrs. Miller to make or join in making the declaration of homestead, the undivided one-half interest conveyed to her by the joint tenancy grant deed of May 21, 1927, remained unaffected by the declaration of homestead filed by her husband and was not exempt from forced sale, and accordingly exemption was disallowed as to the undivided one-half interest in the property conveyed to Mrs. Miller as joint tenant with her husband.

The referee propounds two questions in this review, as follows:

"1. Did a declaration of homestead, executed by the husband alone, upon property held by the husband and wife as joint tenants, have the effect of exempting the undivided one-half interest in said property conveyed to the wife, as against the trustee in bankruptcy of the wife; said declaration of homestead having been recorded August 31, 1932?

"2. Was parol evidence admissible on behalf of the bankrupt and her husband to prove that though the property was conveyed to and held by them as joint tenants, it was paid for with community funds and there was no intent to disturb or change the community character of the property?"

Considering the questions in inverse order while we think it unnecessary under the record before us to pass upon the correctness of the ruling of the referee which excluded parol evidence of the source of the purchase money or the intent of Mr. and Mrs. Miller in taking title to the property, the weight of respectable authority amply supports the referee. In re Gordon's Estate, D.C., 44 F.2d 810; In re Sterling, D.C., 20 F.Supp. 924; Estate of Gurnsey, 177 Cal. 211, 170 P. 402.

The remaining question in our opinion should be answered in the affirmative. The object of laws creating and relating to the homestead is, in the words of the California Supreme Court in Marelli v. Keating, 208 Cal. 528, at page 531, 282 P. 793, at page 794: "to protect the homesteader and those dependent upon him or her in the enjoyment of a domicile not exceeding $5,000 in value, and to this end a liberal construction of the law and facts will be indulged by courts."

Homestead statutes are remedial. In interpreting them the court should, if it can reasonably do so under the concrete factual situation, make secure to the claimant all the domiciliary protection and immunity which the homestead attaches to the title.

In Jacobson v. Pope & Talbot, 214 Cal. 758, at page 761, 7 P.2d 1017, at page 1018, in discussing the scope of homestead security, the court said: "It is the policy of the homestead law to protect the home against the enforcement of the debts of the declarant. Such debts may be, and often are, just obligations. 'The law authorizes a debtor to erect a barrier around the home, over which the sheriff, although armed with final process under such a judgment, cannot pass. With the policy of the law, or the abstract morality of a particular transaction, we have nothing to do.' Fitzell v. Leaky, 72 Cal. [477], 483, 14 P. 198, 201. If a homestead declarant may defeat the enforcement of his own just obligations by making the declaration, there would seem to be equal or better reason why he should be permitted to defeat the enforcement against the homestead of the obligations of another." And my colleague, Judge Leon R. Yankwich, in the illuminating opinion in Re Sterling, supra [20 F.Supp. 926], observed that the object of homestead laws "is to protect the home against the creditors of the declarant. To achieve this result, they will be construed liberally. [Cases cited.]

"So doing, many courts, under laws somewhat similar to those of California, have allowed homesteads on lands held in cotenancy, upon the theory that the object of the homestead exemption is to protect the declarant and his family in their possession of a home 'irrespective of the

character or extent of the estate' which he held in the property." (Cases cited.)

The paramount purpose of homestead laws being to afford protection to the home against creditors, this purpose is accomplished only by extending execution or forced sale immunity to the limit of the law.

Section 1260 of the Civil Code of California exempts homesteads selected and claimed by the husband to the value of $5,000. In this review we are not concerned with homestead rights which have a value exceeding $5,000, and it is clear that if the husband is required to relinquish and surrender to the bankrupt estate a portion of the homestead exemption, he and his wife are thereby deprived of the protection to themselves and to their home vouchsafed by the statutes of the state of California.

Since the 1929 amendment to § 1238 of the California Civil Code, the "property" from which a husband could select a homestead has been that "estate" which vests in the claimant the immediate right of possession, even though such right of possession is not exclusive. Watson v. Peyton, 10 Cal.2d 156, 73 P.2d 906. This amendment obviously pertains to cotenancies, the most frequently used in California by married persons in acquiring real property for homesites being joint tenancies. In the case just cited, the court, speaking of the property from which a husband who is joint tenant with his wife may select and claim a homestead, described the character and extent of the right in this language (10 Cal.2d at page 160, 73 P.2d at page 908): "It is such an estate that the husband has in property held in joint tenancy with his wife—a right of possession though not exclusive, but nevertheless a separate estate upon which he may declare a homestead. This estate covers the whole interest in the land, subject to the right of survivorship, * * *."

If the homestead estate covers the "whole interest" in the property, and if the "whole interest" in the property does not exceed $5,000 in value, it follows that the "whole interest" or the entire property is exempt.

The only basis, since the amendment of 1929 to § 1238 of the Civil Code of California, for the contention that Miller's declaration of homestead is ineffectual upon Mrs. Miller's separate property right in the joint tenancy estate is to be found in § 1239 of the same Code, which reads: "From separate property of wife. The homestead cannot be selected from the separate property of the wife, without her consent, shown by her making or joining in making the declaration of homestead."

We think this is a protective statute to be invoked by the wife for the benefit of herself and her family for the preservation of the home. See Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003. The fundamental purpose behind homestead legislation is frustrated if creditors may step into the shoes of the wife and enjoy the benefits which § 1239 reposes in her.

There has been no act by Mrs. Miller than can be construed as any relinquishment or diminution of the protective features vested in her by the laws of the state of California. On the contrary, in her voluntary petition filed simultaneously with that of her husband, she scheduled the property under consideration and also as her husband had done she claimed the whole of the interest and the entire property as exempt under the homestead declared by her husband.

We conclude by holding that under the record no part of the homesteaded property passed to the trustee in bankruptcy, and that any ratable apportionment of the homestead exemption between husband and wife is unauthorized by law. The entire property described in the joint tenancy deed of May 21, 1927, and in the declaration of homestead recorded August 31, 1932, is exempt under the laws of the state of California, and the trustee in bankruptcy is entitled to no interest in said property.