[L. A. No. 17961.  In Bank.  Sept. 11, 1942.]

Estate of HARRY KACHIGIAN, Deceased.  AGHAVNIE KACHIGIAN, Appellant, v. TOROS KACHIGIAN, Respondent.

Harold M. Child and L. N. Barber for Appellant.

Harry Sarkisian for Respondent.

GIBSON, C. J.—The decedent, Harry Kachigian, and his brother Toros owned as tenants in common forty acres of vineyard in Fresno County and certain personal property consisting of farming tools, implements, and equipment used

in cultivation. The brothers had operated the vineyard together, and both lived on the land. There were two houses upon the property, one of which was occupied by Toros and the other by Harry and his wife, Aghavnie, the appellant herein. Harry and Aghavnie had no children, and Harry's interest in the land and personalty was his separate property. Pending the administration of Harry's estate his surviving wife petitioned the probate court to set the above real property apart to her as a homestead and also asked that the personal property, designated as exempt from execution and necessary for the operation of the vineyard, be set apart to her. Toros filed objections to the petition, contending that any order setting apart to the widow the decedent's interest in the property would be prejudicial to Toros' rights as tenant in common. That the property is physically suitable for a homestead was not disputed. The trial court denied the petition, and the widow now prosecutes this appeal from the court's order contending that the probate court erred in refusing to set apart a homestead in the realty and that, if this is true, there was an abuse of discretion in refusing to set aside the decedent's interest in the personal property. The principal question now before us, therefore, is whether the probate court should, upon the petition of a surviving wife, select and set apart a homestead for her use out of her deceased husband's undivided one-half interest in real property held by the decedent and a third person as tenants in common.

Prior to 1929 it was well settled in California that, with certain exceptions where the owners were husband and wife, land owned by persons as tenants in common or joint tenants could not be subject to a homestead. The rule, announced in *Wolf* v. *Fleischacker*, 5 Cal. 244 [63 Am. Dec. 121] (1855), was first applied to an attempt by a co-owner to create a homestead exempt from execution during his life. (*Reynolds* v. *Pixley*, 6 Cal. 165; *Giblin* v. *Jordan*, 6 Cal. 416; *Kellersberger* v. *Kopp*, 6 Cal. 563; *Bishop* v. *Hubbard*, 23 Cal. 514 [83 Am. Dec. 132]; *Elias* v. *Verdugo*, 27 Cal. 418; *Seaton* v. *Son*, 32 Cal. 481; *Cameto* v. *Dupuy*, 47 Cal. 79; *First National Bank* v. *De La Guerra*, 61 Cal. 109; *Fitzgerald* v. *Fernandez*, 71 Cal. 504 [12 Pac. 562]; *Rosenthal* v. *Merced Bank*, 110 Cal. 198 [42 Pac. 640]; *Schoonover* v. *Birnbaum*, 148 Cal. 548 [83 Pac. 999].) Subsequently, upon the authority of these decisions, it was held that the probate

court could not designate a homestead in such property for the use of the family of one of the owners after his death. (*Kingsley* v. *Kingsley,* 39 Cal. 665; *Estate of Carriger,* 107 Cal. 618 [40 Pac. 1032]; *Estate of Davidson,* 159 Cal. 98 [115 Pac. 49]; *Estate of Carraghar,* 181 Cal. 15 [183 Pac. 161].)

The statutes pertaining to probate homesteads did not define the property out of which such a homestead could be set apart, simply providing that under certain circumstances the probate court could select a homestead out of the real estate of the decedent (former § 1465 of Code Civ. Proc.; Probate Act of 1851, § 124 and § 121 as amended in 1866 and as construed in *Estate of Busse,* 35 Cal. 310 [1868]), and the courts looked to the earlier decisions relating to homesteads sought under the Homestead Act, and, later, the Civil Code, to determine the nature of the property that might be used. For example, in *Kingsley* v. *Kingsley, supra,* the first decision refusing to create a probate homestead out of property in which the decedent held an undivided interest, it was stated (pp. 666-667): "There is nothing in [the probate] sections tending to the conclusion that any property could be set apart as a homestead by the Probate Court which might not have been dedicated as a homestead under the Homestead Act, immediately preceding the death of the deceased." In *Estate of Davidson, supra,* the court said (p. 100): "It is, of course, well settled that the court in the administration of the estate of a decedent cannot set apart lands of the estate, as a probate homestead, unless they were lands upon which a homestead could have been impressed in the lifetime of the deceased. . . . So the question presented here is, could either spouse during the lifetime of the husband impress a homestead solely on his undivided interest. . . . If this could have been done the court erred in refusing to make the homestead order asked by petitioner." Similar reasoning was expressed in other probate cases. (*Estate of Carriger, supra;* cf. *Estate of Noah,* 73 Cal. 590, 592 [15 Pac. 290, 2 Am. St. Rep. 834].)

The probate homestead statutes have remained substantially unchanged, insofar as the present question is concerned, and the Probate Code, enacted in 1931, now provides that the court must select the probate homestead "out of the separate property of the decedent" if there is no community property or property owned in common by the de-

cedent and the person entitled to the homestead. (Prob. Code, § 661.)   If we find, therefore, that the restrictive rule as to homesteads declared during the life of the owner has been changed by the Legislature, it necessarily follows from the reasoning of the probate cases that a like result must be reached where a probate homestead is sought.

The respondent contends that it must be presumed that the Legislature was familiar with the former decisions and that in failing to change the probate statutes it must have intended to leave the probate law unchanged; but, if we presume that the Legislature was familiar with the former decisions, it would seem improper for us to presume that it was unaware of their basic reasoning and hold that it did not realize the probate rule must change if the basis therefor were changed.

In our opinion the former rule prohibiting the selection of a homestead from an undivided interest in property during the lifetime of the owner has been abandoned.   Prior to 1929 section 1238 of the Civil Code read: "If the claimant be married, the homestead may be selected from the community property, or the separate property of the husband, or, with the consent of the wife, from her separate property. . . ."   In that year the Legislature added the following sentence: "Property, within the meaning of this section, includes any freehold title, interest, or estate which vests in the claimant the immediate right of possession, even though such right of possession is not exclusive."   In view of the law prevailing at the time of this amendment it seems obvious that the amendment could have referred only to estates such as tenancies in common and joint tenancies, for the cases establishing that law were based upon the theory that because of the nature of such tenancies, in particular, the absence of an exclusive right of possession, it was impossible to segregate and delimit the undivided interest sought to be impressed with a homestead. (*Estate of Davidson, supra,* pp. 100-101; *Seaton* v. *Son, supra,* p. 484.) The Legislature removed this judicially-imposed obstacle. In *Watson* v. *Peyton,* 10 Cal. (2d) 156 [73 P. (2d) 906], this court, in holding that a husband could without the consent of his wife declare a homestead upon property held by them as joint tenants, cited the earlier cases and said (pp. 159-160) : "The amendment to section 1238 of the Civil Code followed these cases and declared that the 'property' from which a husband

could select a homestead was that 'estate' which vests in the claimant the immediate right of possession, even though such right of possession is not exclusive. It is such an estate that the husband has in property held in joint tenancy with his wife—a right of possession though not exclusive, but nevertheless a separate estate upon which he may declare a home-stead." (Cf., also, *In re Sterling*, 20 F. Supp. 924 [S. D. Cal.]; *In re Miller*, 27 F. Supp. 999 [S. D. Cal.].) The reasoning in the Watson case seems equally applicable to situations wherein the cotenants are not husband and wife.

▮ The policy underlying all homestead legislation, whether providing for the selection of a homestead by a person during his lifetime or by the court for his family after his death, is as stated in *Estate of Fath*, 132 Cal. 609, 613 [64 Pac. 995], "to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors," and to this end a liberal construction of the law and facts will be adopted by the courts. (See, also, *Estate of Adams*, 128 Cal. 380, 383 [57 Pac. 569, 60 Pac. 965]; *Lucci* v. *United Credit & Collection Co.*, 220 Cal. 492, 496 [31 P. (2d) 369]; *Greenlee* v. *Greenlee*, 7 Cal. (2d) 579, 583 [61 P. (2d) 1157].) ▮ Our view that tenancies in common and joint tenancies may now be subject to homestead rights is in furtherance of this policy, and it extends the benefits of the statutes to many families which would otherwise be deprived thereof. The former restrictive rule was early recognized as harsh in its operation, but the court felt bound by its first decision in *Wolf* v. *Fleischacker*, 5 Cal. 244 [63 Am. Dec. 121]. (For example, see *Giblin* v. *Jordan*, 6 Cal. 416, 418; *In re Carriger*, 107 Cal. 618, 621 [40 Pac. 1032]; *Swan* v. *Walden*, 156 Cal. 195, 198-199 [103 Pac. 931, 134 Am. St. Rep. 118, 20 Ann. Cas. 194]. Mr. Justice Olney, by a separate concurring opinion in *Estate of Carraghar, supra,* at page 21, said: "I concur, but solely on the ground that the question is now determined by the previous decisions of this court. If it were not for those decisions, I believe the rule should be that a homestead may be imposed in the instances provided by the statute regardless of the character of the title of the homestead claimant or his or her spouse, the homestead, of course, affecting only the interests of the

claimant or spouse, whatever those interests may be. The only requirement of the statute in this respect is that the claimant be residing upon the premises, and to require more than this and make the validity of the homestead dependent upon the character of the interests affected is without statutory warrant and contrary to the object of the statute. The injustice, I think, is manifest in the present case.'' Further, the majority of the other jurisdictions have held that no distinction is to be made between estates in severalty and estates in cotenancy. (See cases collected in 89 A. L. R. 511, 540, et seq.)

It cannot be said that the rights of the other cotenant are in any way prejudiced, as the homestead claimant, or his surviving family, acquires only such rights of occupancy as he had before the creation of the homestead, and the other cotenant's interest is in no way affected; for example, his right to use the property remains exactly as before and he may sell or assign his undivided share. If he objects to his cotenant, his remedy is by partition. (Code Civ. Proc., § 752, et seq.; 20 Cal. Jur. 586, et seq.; see, also, other remedies between cotenants enumerated in 7 Cal. Jur. 363, et seq.)

We hold, therefore, that the court must select and set apart for appellant a probate homestead from the undivided interest of the decedent in the real property in question.

The disposition of the exempt personal property of the decedent is governed by section 660 of the Probate Code, which provides that ''the court, on petition therefor, may in its discretion set apart to the surviving spouse . . . all or any part of the property of the decedent exempt from execution. . . .'' This section, as well as section 661, was derived from former section 1465 of the Code of Civil Procedure, and as in the homestead provisions, no mention is made of property in which the decedent held only an undivided interest. This court, however, in *Estate of Pillsbury*, 175 Cal. 454 [166 Pac. 11, 3 A. L. R. 1396], in holding that the right to exempt property could be waived, said (p. 457): ''In the matter of the probate of an estate, the governing principle in construing section 1465 of the Code of Civil Procedure is the same in the case of all other exempt property as it is in the case of a homestead. . . . The absolute identity in principle between the setting apart of a homestead under section 1465 of the Code of Civil Procedure and the setting

apart of all other property declared to be exempt from execution is announced and established in *Estate of Moore,* 57 Cal. 446.'' That personal property held in cotenancy may be exempt from execution is not disputed. (*Stanton* v. *French,* 83 Cal. 194 [23 Pac. 355].) Thus, in accordance with the principles above discussed with regard to appellant's right to a homestead, she may also have set apart to her the decedent's undivided interest in the exempt personal property. This right, however, is subject to the discretion of the court below. (Prob. Code, § 660, *supra.*) In the instant case it is apparent from the face of the order denying the petition that the court relied solely upon the fact that the decedent held the property only as a cotenant and that the court did not purport to exercise its discretion in disposing of the personalty, and we need not at this time determine whether or not, after designating a homestead, a refusal to so set apart the personal property would be an abuse of discretion.

The judgment is reversed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Peters, J. pro tem., concurred.