[S. F. No. 11150. In Bank.—November 5, 1924.]

# LAURA F. KEMP, etc., Appellant, v. E. H. ENEMARK et al., Appellants.

[1] HOMESTEADS — EXECUTION SALE — INJUNCTION SUIT BY WIFE — MONEY INVESTED FRUIT OF FRAUD PRACTICED BY HUSBAND — FINDINGS—EVIDENCE—APPEAL—PRESUMPTIONS.—In an action by a wife to enjoin an execution sale of real property covered by a homestead, the appeal by her having been on the judgment-roll alone, the findings of the trial court that certain money procured by the fraud of plaintiff's husband went into the homestead property and that said money so obtained by fraud was invested in and constituted a part of said homestead property, and that plaintiff did not reside on the premises in question at the time of a first declaration of homestead thereon, but that she did reside thereon at the time of a second declaration of homestead, must, in the absence of a record showing the evidence adduced upon the trial, be taken as fully supported by the evidence.

[2] ID.—WIFE NOT PARTY TO FRAUD—ABSENCE OF OFFER TO DO EQUITY —EFFECT OF.—In such action, the plaintiff, even though she was not a party to the fraud committed by her husband, cannot successfully seek the aid of equity, where she does not offer to do equity, but to the extent of the money obtained by her husband by fraud, invested in the homestead, she is seeking to retain for herself that which is not rightfully hers; in other words, the plaintiff is seeking the aid of a court of equity to preserve to her the fruits of the fraud of her husband.

[3] ID.—FRAUD—HOMESTEAD SUBJECT TO EXECUTION.—In such action, the contention that inasmuch as the homestead in question does not fall within either of the classifications of homesteads which may be subjected to execution and sale, as designated by sections 1241 and 1245 to 1259, inclusive, of the Civil Code, no attack can be successfully made upon said homestead, and that plaintiff is therefore entitled to an injunction by a court of equity restraining the sale of said homestead under execution, cannot be sustained.

[4] ID. — MONEY FRAUDULENTLY OBTAINED — PART OF HOMESTEAD— HOMESTEAD SUBJECT TO ATTACK.—A homestead may be successfully attacked on the ground of fraud where money, fraudulently obtained, is invested in and constitutes a part of the homestead property.

[5] ID.—JUDGMENT AGAINST HUSBAND—FRAUD—EQUITABLE DEFENSE AVAILABLE IN ACTION BY WIFE—EQUITY.—The defendant, who had

4. See 13 Cal. Jur. 551.

obtained a judgment on a promissory note against plaintiff's husband, which note evidenced a loan to the lattter procured on the strength of the signature of a comaker of the note which had been forged by the husband, could, in such action by the wife to enjoin an execution sale of real property covered by a homestead, in which the money fraudulently obtained was invested, set up the equitable defense of fraud practiced by the husband, without having first established his (defendant's) claim in equity against the property.

[6] ID.—VENDOR'S LIEN—EQUITABLE RIGHTS—JUDGMENTS.—The fact that a vendor's lien must be established by a court of equity does not compel the conclusion that all equitable rights, before they may be availed of as a defense, must be first established by a decree in equity.

[7] ID.—MONEY JUDGMENT AGAINST HUSBAND—FRAUD—DEFENSE—ESTOPPEL—EQUITY.—In such action, the fact that the defendant proceeded at law to secure a money judgment against the plaintiff's husband based upon the latter's promissory note did not deprive defendant of the right of setting up the fraud practiced by the husband as a defense to the wife's action, there having been no elements of estoppel present in the case which would make it inequitable or unjust to allow the defendant to set up his equitable defense.

[8] ID.—EQUITY—DEFENSE—ESTOPPEL.—In such action, plaintiff cannot force the defendant to come into a court of equity to protect his rights secured by a judgment in a court of law and at the same time prevent the defendant from setting up an equitable defense upon the theory that the defendant had already elected to prosecute his action at law.

[9] ID.—ASSIGNMENTS—FRAUD—PROPERTY RIGHTS.—The defendant in such action was not precluded by the fact that he was not the defrauded party, but was an assignee from setting up the defense of fraud upon the theory that a cause of action for fraud and deceit is not assignable. The assignment of the note by the assignor to the defendant carried with it such right as the former had growing out of any fraud in the transaction; it was the assignment of a definite property right and carried with it the right to set up that fraud and to enforce all the rights incident to the property transferred which the original owner would have had.

[10] ID.—EQUITY—ASSIGNMENTS—FRAUD—PROPERTY RIGHTS.—A bare right to sue in equity for fraud separate and distinct from a property right is not assignable, but where the right to sue for a fraud is merely incidental to a subsisting substantial property

10.   See 3 Cal. Jur. 256; 2 R. C. L. 611.

right which has been assigned and which is itself intrinsically susceptible of legal enforcement, the assignment carries with it the right to set up the fraud.

---

(1) 4 C. J., p. 777, sec. 2727. (2) 21 C. J., p. 172, sec. 151; p. 180, sec. 162; 23 C. J., p. 569, sec. 476. (3) 29 C. J., p. 967, sec. 415. (4) 29 C. J., p. 982, sec. 447. (5) 29 C. J., p. 982, sec. 447. (6) 29 C. J., p. 982, sec. 447. (7) 29 C. J., p. 982, sec. 447. (8) 29 C. J., p. 982, sec. 447. (9) 5 C. J., p. 892, sec. 56. (10) 5 C. J., p. 891, sec. 56.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

Knight, Boland, Hutchinson & Christin for Appellant.

Bohnett, Hill & Campbell for Respondents.

LENNON, J.—The plaintiff in this action seeks the equitable relief of injunction to prevent the defendants from selling real property under an execution sale. The trial court denied the relief sought and this is an appeal from a judgment in favor of the defendants. The appeal comes here upon the judgment-roll alone.

The facts of the case as revealed by the record before us are substantially these: John D. Kemp, the husband of the plaintiff herein, entered into a contract with the Bank of San Jose whereby it was agreed that the bank would lend to said Kemp the sum of two thousand five hundred dollars if he would execute and deliver to the bank a promissory note signed jointly and severally by himself and one L. G. Lerner. Said John D. Kemp executed the required note, but instead of securing the signature of the said L. G. Lerner, as a joint maker, as he had agreed to do, forged the signature of said L. G. Lerner to the note. Kemp then presented the note to the bank and represented to the bank that the signature of L. G. Lerner was genuine. Relying upon the representation thus made, the bank, on October 18, 1920, loaned to Kemp the sum of two thousand five hundred dollars. Kemp took the proceeds of the loan and invested the same in making improvements and paying part

of the purchase price on a ranch which he then owned in the county of Santa Clara. Thereafter, in June, 1921, Kemp entered into an agreement of sale and exchange, whereby the Santa Clara property was exchanged for real property in the city and county of San Francisco. Thereafter Kemp decamped for parts unknown and he has not been heard from since. The record title to said last-mentioned property has stood in the name of John D. Kemp since July, 1921, but said property is in reality community property. The actual value of said last-mentioned real property was and now is the sum of five thousand dollars.

On or about August 19, 1921, the bank, seeking to have its loan repaid, assigned to one Enemark, for collection, the note given by John D. Kemp to the bank, and on the same day Enemark commenced an action on the note against John D. Kemp and L. G. Lerner, whose name had been forged to the note. The day following the institution of the action on the note Enemark and the Bank of San Jose discovered for the first time that the signature of L. G. Lerner had been forged to the note. Thereupon the action was dismissed as to Lerner. After dismissing the action against Lerner on the promissory note, Enemark in that action commenced publication of summons against John D. Kemp. While publication of summons was running, Laura F. Kemp, plaintiff in this action, and wife of John D. Kemp, made two declarations of homestead, for the joint benefit of herself and her husband, upon the property situate in the city and county of San Francisco, one on August 19, 1921, and one on November 28, 1921. Upon the publication of summons being completed, and John D. Kemp defaulting, judgment in the sum of twenty-four hundred forty-two and eighty-five one-hundredth dollars ($2,442.85), together with costs, was entered against him on December 6, 1921. Thereafter, on the eighth day of December, 1921, Enemark caused to be recorded in the recorder's office a transcript of said judgment. On the first day of December, 1923, a writ of execution was issued upon said judgment, directed to the sheriff of the city and county of San Francisco, and on the fourth day of December, 1923, said sheriff levied said writ upon the real property situate in the city and county of San Francisco upon which the two declarations of homestead had been filed by Laura F. Kemp. Thereupon the plaintiff in

this action, Laura F. Kemp, joining with her as plaintiff her husband, John D. Kemp, instituted this action against the defendants Enemark and Finn, as sheriff, to enjoin the threatened execution sale. John D. Kemp, upon the theory that he was an unnecessary party to the action, was dismissed as a party plaintiff during the course of the trial of the action. The defendant Enemark and the defendant sheriff filed their respective answers, denying, among other things, that the plaintiff, Laura F. Kemp, resided upon the premises in question at the time the homesteads were declared, and further pleaded, as a separate and special defense, all of the facts relating to the fraud practiced upon the bank by John D. Kemp; and at the same time filed a cross-complaint. At the trial of the case the cause of action pleaded and relied upon in the cross-complaint was abandoned.

All of the fraudulent representations involved in the transaction in suit were made by John D. Kemp alone. Laura F. Kemp was not a party thereto and had no notice or knowledge of any of the fraudulent representations, acts, or deeds done and made by said John D. Kemp until long after the same had been done and made. It should be noted in particular that the trial court specifically found that the money procured by the fraud of the plaintiff's husband went into the homestead property and that said money so obtained by fraud was invested in and constituted a part of said homestead property. The trial court further and finally found that the plaintiff did not reside on the premises in question at the time of the first declaration of homestead thereon, but that the plaintiff did reside on the premises at the time of the second declaration of homestead. [1] The findings of the trial court as hereinbefore narrated in substance and effect must, in the absence of a record showing the evidence adduced upon the trial, be taken as fully supported by the evidence.

[2] He who seeks equity must do equity. Plaintiff does not dispute that the money in question was fraudulently obtained, but relies for a reversal in part upon the point that she was not a party to the fraud. As pointed out in *Shinn* v. *MacPherson*, 58 Cal. 596, "It is not important that it does not appear that Mrs. MacPherson [the wife] participated in the wrongful acts of her husband. If the trans-

action is permitted to stand, she, as well as he, will reap the fruit of fraud. . . . Neither ever had, or ever could have, any right founded on the fraudulent appropriation of funds of other parties.'' It will be noted that the claim sought to be satisfied is not in excess of the amount out of which the bank was defrauded by Kemp, and to the extent of the money obtained by her husband by fraud, invested in the homestead, the plaintiff in the case at bar is seeking to retain for herself that which is not rightfully hers. And while retaining that which rightfully belongs to another she seeks the aid of a court of equity to make secure her wrongful possession thereof. In other words, the plaintiff herein is seeking the aid of a court of equity to preserve to her the fruits of the fraud of her husband. Plaintiff does not offer to do equity. She cannot therefore successfully seek the aid of equity.

[3] There is no merit in plaintiff's contention that inasmuch as the homestead in the instant case does not fall within either of the classifications of homesteads which may be subjected to execution and sale, as designated by sections 1241 and 1245 to 1259, inclusive, of the Civil Code, no attack can be successfully made upon said homestead, and that she is therefore entitled to an injunction by a court of equity restraining the sale of said homestead under execution. The case of *Shinn* v. *MacPherson, supra,* holding adversely to this contention, is squarely in point. In that case money was fraudulently abstracted by the husband from the assets of the firm of which he was a member and used to pay off the mortgage upon premises upon which his wife had previously filed a declaration of homestead. The court in that case held that the homestead was not exempt from execution, saying, ''There is no provision of the homestead law that affords a cloak for such transaction. The law was enacted for beneficent purposes, designed to secure a home for the family but . . . was never intended 'to be a secure and impregnable asylum in which to deposit peculations from others.' It is true . . . that it is by statute exempted from execution or forced sale except in certain enumerated cases. But these provisions of the statute have no application to the case before us.'' These provisions were designed to protect the homestead ''from forced sale for ordinary

194 Cal.—48

indebtedness, . . . not as an immunity from torts and their legal consequences.''

The case of *Ohio Electric Car Co.* v. *Duffet*, 48 Cal. App. 674 [192 Pac. 298], is also *contra* to plaintiff's contention. The court there held that a court of equity had the power to declare a lien on a homestead to the extent of the fund received by the wife from the sale of property transferred to her by her husband to defraud creditors and found to have been invested by her in property upon which she declared a homestead. In that case the money invested in the homestead property was derived from the sale of other property fraudulently transferred by the husband to the wife. In the intant case the money was obtained from the Bank of San Jose by means of the forgery of the husband. The only distinction between the case last cited and the instant case consists in the type of fraud practiced. The principle involved is the same, viz., the homestead property which represents the fruit of fraud is not exempt from execution and sale. The court in that case said, ''In so far as her home represented the funds received from her husband, under the circumstances in this case, it was not a proper subject for inclusion in her declaration of homestead, and cannot be impressed with this character. In so far as this property is not her property, but is property belonging to another and impressed with a trust, it is beyond the protection of the homestead laws.''

[4] It is one of the contentions of the plaintiff that it is only in those cases where there is a defect in the title to the property homesteaded, occasioned by the transfer of that property in fraud of creditors, that the homestead may be successfully attacked on the ground of fraud. The cases of *Shinn* v. *MacPherson, supra,* and *Ridell* v. *Shirley,* 5 Cal. 488, are opposed to this contention. In neither of these cases was there a transfer of the homesteaded property. In the former case money obtained by the peculations of one member of the firm from the firm assets was invested in the homesteaded property. In the latter case, personalty was sold by the debtor and the proceeds used to pay off a mortgage on the homestead. In both of these cases the rights of the creditors were declared paramount to those of the owner of the homestead.

[5] Plaintiff insists that no equity, however great and meritorious, which is not established by a judgment of a court of equity, can be used as a defense in an application for an injunction to restrain an execution sale of an exempted homestead. In this behalf plaintiff insists that it was necessary for the defendant to first establish his claim in equity against the property, and that he was not at liberty to obtain a judgment at law and then, when hampered in the execution of the judgment by an application for an injunction, set up an equitable defense. In this behalf plaintiff insists that *Shinn* v. *MacPherson* and other cases in which a homestead was attacked because of fraud, were suits in equity brought directly for the purpose of having a lien adjudged upon the premises. Obviously, the fact that this was the procedure followed in one case, or in a series of cases, does not compel the conclusion that the procedure followed was the only permissible procedure. It may be noted that in *Bishop* v. *Hubbard,* 23 Cal. 514 [83 Am. Dec. 132], the same procedure was followed as that followed by the defendants in the instant case.

Plaintiff likewise instances, in support of this contention, the fact that a vendor's lien must be established by a judgment of a court of equity before it becomes a subsisting lien. [6] The fact that a vendor's lien must be established by a court of equity does not, we think, compel the conclusion that all equitable rights, before they may be availed of as a defense, must be first established by a decree in equity.

[7] The fact that the defendant, Enemark, proceeded at law to secure a money judgment against John D. Kemp based upon Kemp's promissory note does not, we think, deprive defendant of the right of setting up the fraud practiced by Kemp as a defense to this action. It is to be remembered that the doctrine of the election of remedies is generally regarded as being an application of the law of estoppel. No elements of estoppel are present in the instant case which would make it inequitable or unjust to allow the defendant to set up his equitable defense. (*Crittenden* v. *St. Hill,* 34 Cal. App. 107 [166 Pac. 1016].) The defendant is not attempting, after having exhausted his legal remedy, to come into court and maintain a right of action founded upon a theory inconsistent with that which formed the basis

of· his former action. He is merely setting up, as an equitable defense to an equitable action, the fact surrounding the fraudulent procurement of the money in question. No necessity existed for the establishment by the defendant of the fraud of Kemp in the procurement of said money, until the filing by the plaintiff of her action to enjoin the sale of the property. **[8]** Plaintiff cannot force the defendant to come into a court of equity to protect his rights .secured by a judgment in a court of law and at the same time prevent the defendant from setting up an equitable defense upon the theory that the defendant had already elected to prosecute his action at law.

**[9]** The defendant in this action is not precluded by the fact that he is not the defrauded party, but is an assignee, from setting up the defense of fraud upon the theory that a cause of action for fraud and deceit is not assignable. The assignment of the note by the Bank of San Jose to the defendant Enemark carried with it such right as the bank had growing out of any fraud in the transaction. It was the assignment of a definite property right and carried with it the right to set up that fraud and to enforce all the rights incident to the property transferred which the original owner would have had. **[10]** A bare right to sue in equity for fraud separate and distinct from a property right is not assignable, but where the right to sue for a fraud is merely incidental to a subsisting substantial property right which has been assigned and which is itself intrinsically susceptible of legal enforcement, the assignment carries with it the right to set up the fraud. (*Emmons* v. *Barton,* 109 Cal. 662 [42 Pac. 303].)

The judgment is affirmed.

Lawlor, J., Richards, J., Waste, J., Seawell, J., Shenk, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.