[S. F. No. 13517. In Bank.—February 1, 1932.]

C. M. JACOBSON, Appellant, v. POPE & TALBOT et al., Respondents.

W. F. Stafford and H. M. Anthony for Appellant.

Jones & Dall, Albert J. McGuire, J. E. White and Walter E. Drobisch for Respondents.

THE COURT.—The plaintiff appeals from that portion of a decree which quiets his title to a described parcel of real property "subject" to certain attachment liens in favor of the defendants.

Marion Barker and Ruth Barker, husband and wife, originally owned the property here involved in joint tenancy. What purports to be a declaration of homestead covering the same was recorded by them on January 5, 1928. In various actions instituted by the defendants herein against Marion Barker certain writs of attachment were thereafter issued and levied upon his interest in the property. On May 11, 1928, he and his wife, for a valuable consideration, transferred and conveyed the property to the plaintiff. On July 7, 1928, the plaintiff and his wife executed and recorded a declaration of homestead upon the property which has never been abandoned and the validity of which is apparently conceded. The attachment liens of the defendants continue to remain of record, and the plaintiff brings this action to quiet his title.

Sections 1240 and 1241 of the Civil Code provide, in substance, that a homestead is exempt from execution or forced sale except in satisfaction of judgments obtained, "1. Before the declaration of homestead was filed for record, and which constitutes liens upon the premises. 2. On debts secured by mechanics, contractors, subcontractors, artisans, architects, builders, laborers of every class, materialmen's or vendors' liens upon the premises. 3. On debts secured by

mortgages on the premises, executed and acknowledged by husband and wife, or by an unmarried claimant. 4. On debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record.''

The authorities construing and applying these code provisions are uniform to the effect that a valid declaration of homestead serves to exempt the homesteaded property from execution or forced sale in satisfaction of all claims and liens, arising or obtained either prior or subsequent to the declaration, other than those specifically enumerated in and excepted by section 1241, *supra*. (*Beaton* v. *Reid*, 111 Cal. 484, 486, 487 [44 Pac. 127]; *Fitzell* v. *Leaky*, 72 Cal. 477, 483, 484 [14 Pac. 198].) It necessarily follows and has repeatedly been held that an attachment lien is defeated by the intervention of a homestead right subsequently acquired by the debtor. (*Beaton* v. *Reid, supra; Fitzell* v. *Leaky, supra; McCracken* v. *Harris*, 54 Cal. 81.) This being so, a valid declaration of homestead by the Barkers, the original owners of the property, would have served to defeat any and all prior and subsequent attachment liens acquired by the defendants through their respective actions against Marion Barker, the husband, and the subsequent conveyance of the property to the appellant would obviously have been free and clear of such attachment liens.

The defendants contend that the declaration of homestead by the Barkers was ineffectual because the signature of the wife in attesting her consent to the declaration was not acknowledged; that the attachments therefore were valid as against the property in the hands of the Barkers, and that they continued to be a lien thereon notwithstanding the subsequent homestead of the plaintiff. With the contention that the Barker homestead was invalid we are not presently concerned for the reason that, in our opinion, the homestead declaration of the Jacobsons had the same effect on said attachments as the Barker homestead, if valid, would have had. Admittedly the attachments were not reduced to judgment liens prior to the filing of the declaration of homestead by the Jacobsons. Section 1240 of the Civil Code specifically provides that the homestead is exempt from execution except as provided in the title of which that section is a part. The defendants have not brought them-

selves within any of the exceptions. It is the policy of the homestead law to protect the home against the enforcement of the debts of the declarant. Such debts may be and often are just obligations. "The law authorizes a debtor to erect a barrier around the home, over which the sheriff, although armed with final process under such a judgment, cannot pass. With the policy of the law, or the abstract morality of a particular transaction, we have nothing to do." (*Fitzell* v. *Leaky*, 72 Cal. 483 [14 Pac. 198, 201].) If a homestead declarant may defeat the enforcement of his own just obligations by making the declaration, there would seem to be equal or better reason why he should be permitted to defeat the enforcement against the homestead of the obligations of another. The rights of the parties, both as to attachments and homesteads, are governed by the statutes and those statutes prescribe the limitations of their rights. Since the attachments had not ripened into judgment liens before the plaintiff's homestead was perfected, the homestead was not affected by them.

In answer to the argument of the defendants that the Barkers' title was subject to the levy of the attachments at the time the transfer was made to Jacobson, and that the Barkers could not convey an estate greater than they owned, it may be said that the Barkers, before said transfer, could have declared a valid homestead and thus removed the property from the effect of the attachments. If they then had that right, it is clear that their grantee would have the same right. In other words, that right in a sense passed with the transfer and was not prejudiced by it.

Since the homestead of the plaintiff is exempt from execution on any judgment which may have been obtained following the defendants' attachments, the power of sale thereunder cannot be asserted and the lien must be denied.

The judgment is modified by striking therefrom all provisions thereof purporting to make the title of the plaintiff subject to the attachment liens of the defendants and by striking out the judgment in favor of the defendants for costs. As so modified the judgment is affirmed, neither party to recover costs of appeal.

WASTE, C. J., Dissenting. — I dissent. The majority opinion rests upon the, to me, false reasoning that, because

the Barkers *could have* declared a valid homestead on the property at any time before they sold it to Jacobson, and thereby have relieved the property from the lien of respondents' attachments, but did not do so, the appellant, who purchased the land subject to the lien of the attachments, may do what the respondents' debtor failed to do and, by making a declaration of homestead subsequent to his buying the land, accomplish that very object. "The object of the homestead law is to protect the homesteader and those dependent upon him or her, in the enjoyment of a domicile not exceeding $5,000 in value, and to this end a liberal construction of the law and facts will be indulged by courts. When the object has been accomplished courts will not suffer this salutary statute to be used as a shield behind which those who would deal unjustly with creditors may find refuge." (*Marelli* v. *Keating,* 208 Cal. 528 [282 Pac. 793].) The effect of the majority opinion, if it is to be the law, is to subject claims like those of respondents to defeat through the operation of two or more homesteads, each of the value of $5,000, as I shall presently demonstrate. It was never intended by the legislature, in enacting the laws relating to homesteads, to make possible any such situation. (*Waggle* v. *Worthy,* 74 Cal. 266, 268 [5 Am. St. Rep. 440, 15 Pac. 831].)

A declaration of homestead creates no new or additional title. It only attaches certain privileges and immunities to such title as may be held at the time the declaration becomes effective. The homestead claim is impressed upon the title subject to such rights as are known to be held by other parties. (*Smith* v. *Bangham,* 156 Cal. 359 [28 L. R. A. (N. S.) 522, 104 Pac. 689].) When the Barkers sold the land to appellant, they conveyed it subject to the respondents' liens. The transfer, subject to the attachments, did not interfere with the rights of attaching creditors. (*Martinovich* v. *Marsicano,* 150 Cal. 597, 600 [119 Am. St. Rep. 454, 89 Pac. 333].) Did the appellant's subsequent declaration of a homestead on the property have the effect of destroying the rights of respondents under their respective attachments? In my opinion it did not. While it is generally true that a declaration of homestead relieves and discharges the property from all claims and liens, other than those excepted by section 1241 of the Civil Code, it is

my view that this exemption has application solely to claims and liens acquired by creditors of the declarant, and does not relate back to destroy claims and liens against the former owner of the property arising and attaching prior to the declarant's acquisition of title, and as to which his title was subject.

I grant that "it is the policy of the homestead law to protect the home against enforcements of the debts of the *declarant*" (italics mine), as the majority opinion declares. "It is true that it is the policy of the law to favor homesteads to a certain extent, for the protection and preservation of homes and families. But there is a limit beyond which this policy should not be allowed to control. It should not be invoked for the purpose of establishing a new application and interpretation of a statute, contrary to its true meaning and in the face of a long-established understanding and usage based on its true meaning." (*Weber* v. *McCleverty*, 149 Cal. 316, 318 [86 Pac. 706].) The majority opinion does not cite, and I do not believe there can be found, a single case in which it has been held that it is the policy of the homestead law to protect a home against claims incurred by persons other than the declarant. In the state of Washington the laws permit homesteads to exempt property against the lien of judgments. In a case differing from this, in that it deals with a probate homestead, the Supreme Court of that state said: "At the time the appellants acquired the property in question, it was subject to the lien of the judgment against Mrs. Smith. It cannot be that they by subsequently filing a declaration of homestead could defeat a lien upon the property which existed at the time they acquired title. We know of no case holding that one not a judgment debtor and who takes the property subject to the lien of a judgment or mortgage can subsequently file a declaration of homestead and defeat such lien." (*Pratt* v. *McInroe*, 155 Wash. 239 [283 Pac. 1089, 1091].)

In going through the decisions of this court, we find such expressions as "not to withdraw from the reach of creditors property of the debtor"; "be protected against creditors" —from the context apparently referring to creditors of the declarant. (*Maloney* v. *Hefer*, 75 Cal. 422, 425 [7 Am. St. Rep. 180, 17 Pac. 539]; *Bullis* v. *Staniford*, 178 Cal. 40, 45 [171 Pac. 1064].) Such I believe to have been the generally

accepted theory of the homestead laws of the state from the beginning. This court had such an understanding fully in mind when it said: "The instances and extent in which and to which the homestead is liable to be subjected to the demands of *creditors of the homestead claimant* (italics mine) are clearly and explicitly provided in the Civil Code," citing sections 1240 and 1241. (*Beaton* v. *Reid,* 111 Cal. 484 [44 Pac. 167].)

I offer the following illustration of what may readily be done if the majority opinion is to be accepted as the proper interpretation of the homestead law of this state: A, the head of a family, owns two pieces of real estate, each with a dwelling-house thereon, the value of each piece of property being $5,000. He resides with his family on one parcel, on which he has declared a valid homestead. The other parcel is unencumbered. B extends credit to A on a contract to the extent, say, of $2,000, without security. There is read into the contract between them the fact that A's homestead is exempt from execution and therefore cannot be relied upon in any way as security for the debt he owes B. B relies upon the unencumbered property of A as security for his debt, which fact, I believe, ought to be as much a part of the contract as the fact of A's right to his homestead exemption. A refuses to pay B the amount of his indebtedness, and B files an attachment on the property not exempted by the homestead, which proceeding constitutes the one specific mode provided by the legislature by which to acquire a lien upon the property of a debtor against whom a cause of action exists arising out of a contract. (*Anderson* v. *Goff,* 72 Cal. 65, 70 [1 Am. St. Rep. 34, 13 Pac. 73].) Ordinarily, and in due course, the obligation not being paid, the lien of B's attachment will be merged into a judgment. Before that is accomplished, however, A sells the attached property to C, who takes possession with notice of the claim and lien of B, occupies the property with his family, and proceeds to declare a homestead thereon. Such declaration by C, if the majority opinion states the law, would serve to enable A, through the instrumentality of C, to withdraw from B the only property of A upon which B, in the course of his dealings with A, had the right to rely as security for the payment of A's debt to him. Such is not the "benign object of the statute". (*Maloney* v. *Hefer, supra.*) In this

connection, see, also, *Kemp* v. *Enemark*, 194 Cal. 748, 753 et seq. [230 Pac. 441], discussing cases in which the rights of creditors are declared paramount to those of the owner of the homestead. In my opinion, the case at bar falls within that category.

Curtis, J., concurred.