[Civ. No. 11306. First Appellate District, Division One.—December 13, 1940.]

IGNATIUS F. PARKER, as Trustee in Bankruptcy, etc., Appellant v. JEANETTE W. RIDDELL, Respondent.

Louis Farrari, Edmund Nelson and Hugo A. Steinmeyer for Appellant.

Benjamin, Lieberman & Elmore for Respondent.

WARD, J.—This is an action by plaintiff as trustee in bankruptcy of the estate of Louis Cass Riddell to set aside five transfers made by the bankrupt to respondent, his wife, and alleged by the trustee to be fraudulent.

The complaint sets forth in five causes of action the different pieces of property conveyed. They consist of three blocks of stock, one piece of real property and an automobile. Judgment was rendered in favor of plaintiff as to the transfer of the automobile, but as to the stock and real estate, the court held that the transfers, of a value in excess of $26,000, were not in fraud of creditors and that they did not render the transferor insolvent. Plaintiff appeals from the judgment except as to that portion thereof in his favor as trustee.

For many years prior to 1929, the Bank of Italy National Trust and Savings Association had granted a line of unsecured credit to the A. E. Little Company, a corporation engaged in the printing and stationery business in Los Angeles. Louis Cass Riddell was one of the stockholders of the company, his holding being 675 shares of 2,400 shares outstanding. In 1928, this unsecured credit was $100,000. A similar line of credit was extended for 1929, but upon the condition that the three principal stockholders, including Mr. Riddell, execute a continuing guarantee of the indebtedness. It is in connection with this guarantee to the bank, the predecessor of the Bank of America National Trust and Savings Association, the only creditor to present a claim against Mr. Riddell's bankrupt estate, that this case deals.

The first two transfers of property by Mr. Riddell to his wife were made on May 10, 1931. They consisted of 8,862 shares of the capital stock of the Kendrick Mercantile Company and 241 shares of the capital stock of the Hoffman Hardware Company. At this time the Little company was indebted to the bank in the amount of $50,000. An investigation by the bank in June revealed accounts receivable of $53,000, $29,000 of which was three months or more past due; and accounts payable of $78,000, $6,000 representing current accounts, and more than $40,000 representing accounts more than six months past due, for which in some instances notes had been given the creditors. An audit of the books of the company by the bank as of August 21, 1931, showed a loss for the fiscal year ending June 30, 1931, amounting to $67,000. On September 1, 1931, the bank required that one of its

officers supervise the financial affairs of the company. Shortly thereafter, on September 16, 1931, Mr. Riddell made the conveyance of the real property to his wife. At this time the indebtedness to the bank was $72,500. In January, 1932, the indebtedness to the bank was $56,500, and in February of the same year letters were addressed to all creditors stating that the company was unable to meet all of its obligations. Shortly thereafter a creditors' committee was formed, which supervised the operations of the company for the balance of the year, during which a portion of the inventory was liquidated. On October 18th of the same year, Mr. Riddell conveyed to his wife 5,350 shares of the capital stock of the Kendrick Mercantile Company which he had received from his mother's estate. At this time the indebtedness of the Little company to the bank was $53,672.33. The creditors' committee having determined that it was impossible to continue the business of the company, a federal equity receiver was appointed with the consent of the company, and an audit by the receiver as of January 14, 1933, shows assets, carried on the books of the company at $229,974.97, to be of an appraised value of $98,076.73. Thereafter, the company being shown to be insolvent, the receiver proceeded to liquidate the business. On October 21, 1935, the transfer of the automobile was made by Mr. Riddell to his wife. During the early period of the Little company's financial difficulties the bank continued to make loans to it. Riddell, so far as the evidence shows, transferred practically all of his property to his wife except the stock held in the A. E. Little Company. There is no evidence that he had any other debts except that arising under the guarantee to the bank.

Appellant contends that the Little company was insolvent at the time of the Riddell transfers; that the stock was practically worthless, and that by reason of Riddell's indebtedness to the bank in connection with the guarantee of the company's obligation to the bank, the transfer to the wife, without consideration, was void. Respondent urges that the retention by her husband of the 675 shares of the Little company stock precluded his being classified as an insolvent at the time the transfers to her were made. The court found against appellant's theory that the transfers were made with fraudulent intent. Assuming that a finding could have been made either way, there is sufficient evidence to support the court's view. It is apparent that Riddell's personal solvency

at the time he made the transfers depends in great measure on the value of the stock he retained. The transfers in this case were made prior to the effectiveness of the Uniform Fraudulent Conveyance Act. (Stats. 1939, chap. 329.) In 1931 and 1932, a debtor was an insolvent when he was unable to pay his debts from his own means as they became due. (Civ. Code, sec. 3450.) Any transfer of property made by an insolvent or in contemplation of insolvency, without a valuable consideration, was void as to existing creditors. (Civ. Code, sec. 3442.)

It is a fact that at the times of the four transfers by Riddell to his wife, the company was unable to pay its debts as they became due. It must be admitted also that Riddell on the dates of the transfers could not have paid the amounts in connection with which he was guarantor except from proceeds derived from the sale of the properties, and stock of the Little company owned by him. Unless, therefore, the 675 shares were worth the amount in connection with which he was guarantor, the transfer of the four properties rendered him insolvent. (*Dixon Lumber Co.* v. *Peacock*, 217 Cal. 415 [19 Pac. (2d) 233].) The guarantee was a demand obligation. The trial court found that Riddell was at all times able to pay his debts and was not insolvent at the time of making the conveyances. It is the evidence in support thereof to which we must direct our attention.

If the highest estimate of the value of the Little company stock is accepted—which is necessary if the trial court's finding is to be upheld—the value of the 675 shares held by Riddell was in excess of the company's indebtedness to the bank at the date of the first two transfers, May 10, 1931. The value of the stock at such date was fixed at $100 to $120 a share by the manager of the Little company, and by Riddell at $100. Thus the Riddell stock at that time was worth at least $67,500. The indebtedness to the bank at that time was $50,000. Based upon the profit and loss statement of June, 1932, the manager of the company fixed the value of the stock on October 18, 1932, the date of the transfer of another block of stock, at $90; Riddell fixed the value at such time as $72.50 a share, making the holding worth from $60,750 to $48,937.50. Accepting the highest figure, as the trial court must have, the value of the stock was in excess of the amount owed the bank by the Little company, $53,672.33. On the date of the

transfer of the real property, the indebtedness guaranteed was $72,500. The highest value given by any witness as of that date, September 16, 1931, was $90 to $100 a share, or a total value of between $60,750 and $67,500. Therefore, as to that transaction, the value of Riddell's stock in the Little company was less than his guaranteed indebtedness at that time.

Eliminating for a moment the matter of the transfer of the real estate, which will be discussed separately, we find sufficient evidence to support the trial court's finding that the transfers of stock on May 10, 1931, and October 18, 1932, did not render Riddell insolvent. There is also evidence to support the trial court's finding that the transfers were made without actual fraudulent intent, although a contrary finding could have been sustained.

The rule is that an appellate court may not disturb findings of facts based on conflicting evidence. The trier of facts has the opportunity of observing the witness and his general demeanor. The appellate court simply reads the record in cold type and sometimes does not obtain from it the impression received by the hearer of the spoken word. The tongue is simply the means or method of conveying thought. An impulsive or unconscious gesture, the intonation of the voice, a hesitant or an alert answer may possibly exclude an inference otherwise reasonably drawn from the written record. In considering an attack upon the findings, the test is "not how we would find the facts to be", but whether there was substantial evidence strong enough to justify the conclusion reached. (*Still* v. *San Francisco etc. Ry. Co.*, 154 Cal. 559 [98 Pac. 672, 129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322]; *Foster* v. *Foster*, 8 Cal. (2d) 719 [68 Pac. (2d) 719].) We are unable to interfere with the finding that Riddell was solvent and that he did not contemplate insolvency on the dates of the transfers.

Appellant contends that unless Riddell's stock in the Little company could be sold on the dates of the transfers for amounts equal to the indebtedness of the company to the bank as of those dates, the finding of solvency is not true. The burden of presenting proof of the insolvency of Riddell was upon appellant. It was not incumbent upon respondent to introduce evidence that the stock could have been sold at the times mentioned at the valuations placed thereon by the witnesses. Our attention has not been called to any evidence

that the stock could not have been sold for such amounts, the evidence introduced being such that an inference could have been drawn either way.

Relative to the transfer of the real property, upon which Mr. and Mrs. Riddell made their home, assuming that the trial court was technically in error as to the solvency of Riddell on the date of its transfer, respondent contends that the judgment in her favor as to that transfer should be affirmed for the reason that there is a declaration of homestead upon this property which renders it exempt from execution.

Conveyances of property made to hinder and delay creditors are permissible if the property so conveyed is a homestead. (Civ. Code, secs. 1240, 1241; *Lucci* v. *United Credit & Collection Co.*, 220 Cal. 492 [31 Pac. (2d) 369]; *Montgomery* v. *Bullock*, 11 Cal. (2d) 58 [77 Pac. (2d) 846]; *Prudential Insurance Co. of America* v. *Beck*, 39 Cal. App. (2d) 355 [103 Pac. (2d) 241].) Such statutes are benevolent and remedial in character and may be liberally construed. Unless a judgment which constitutes a lien is obtained before the filing of the declaration of homestead, the property is ordinarily exempt from execution. A homestead law is to protect property from existing debts. (*Gray* v. *Brunold*, 140 Cal. 615 [74 Pac. 303].) In *Jacobson* v. *Pope & Talbot*, 214 Cal. 758, 760 [7 Pac. (2d) 1017], the court said: ''The authorities construing and applying these code provisions are uniform to the effect that a valid declaration of homestead serves to exempt the homesteaded property from execution or forced sale in satisfaction of all claims and liens, arising or obtained either prior or subsequent to the declaration, other than those specifically enumerated in and excepted by section 1241, *supra* [Civil Code].'' There is an exception to this rule but it does not apply to the facts of this case.

When the proceeds from property fraudulently obtained find their way into a homestead for the purposes of seclusion, the right of a creditor thus defrauded may become paramount to that of the owner of the homestead, dependent upon the facts of the case. An illustration of this principle is found in *Kemp* v. *Enemark*, 194 Cal. 748 [230 Pac. 441], where the husband of plaintiff, by perpetrating a forgery, obtained a loan from a bank. The wife was not a party to

the transaction and had no knowledge of the fraud until long afterward. The husband disappeared, and the bank brought an action on the note given in connection with the loan. Judgment was obtained and a writ of execution issued. Prior to judgment the wife filed two declarations of homestead on the property for the joint benefit of herself and her husband. After levy of the writ, the wife, joining her husband as plaintiff, sought an injunction against the assignee of the bank and the sheriff. The assignee and the sheriff answered, alleging, among other things, that the wife was not residing on the premises at the time the homesteads were declared, and that fraud had been practiced by the husband upon the bank. On the trial the fraud was not disputed but the wife contended that she was not a party thereto. At pages 752, 753, the court said: "As pointed out in *Shinn* v. *MacPherson*, 58 Cal. 596, 'It is not important that it does not appear that Mrs. MacPherson [the wife] participated in the wrongful acts of her husband. If the transaction is permitted to stand, she, as well as he, will reap the fruit of fraud. . . . Neither ever had, or ever could have, any right founded on the fraudulent appropriation of funds of other parties.' It will be noted that the claim sought to be satisfied is not in excess of the amount out of which the bank was defrauded by Kemp, and to the extent of the money obtained by her husband by fraud, invested in the homestead, the plaintiff in the case at bar is seeking to retain for herself that which is not rightfully hers. And while retaining that which rightfully belongs to another she seeks the aid of a court of equity to make secure her wrongful possession thereof. In other words, the plaintiff herein is seeking the aid of a court of equity to preserve to her the fruits of the fraud of her husband. Plaintiff does not offer to do equity. She cannot therefore successfully seek the aid of equity." The Kemp case cites *Ohio Electric Car Co.* v. *Duffet*, 48 Cal. App. 674 [192 Pac. 298], where a wife sold fraudulently acquired property and invested the proceeds in improving real property owned by her which she subsequently homesteaded. In these cases the crime or tort is apparent and the creditors' claims are therefore paramount to those of the owner of the homestead upon the theory that in the matter of declaring homesteads it was never intended that one should reap "the fruit of fraud" (*Kemp* v. *Enemark, supra*) to the disadvantage of

the particular creditor defrauded. In the instant case, the court found against the claim of fraud.

■ Two declarations of homestead were introduced in evidence. If the first declaration is legally sufficient in form, it will not be necessary to consider the second. The first declaration was executed ·January 3, 1933, after the transfer of the property to the wife. Its conveyance to her on September 16, 1931, may have been in fraud of her husband's creditors, but the homestead would have been effective had the property not been conveyed to the wife. The claim of the bank in connection with the husband's guarantee had not been reduced to judgment when the homestead was filed. The creditors have no greater rights because prior to the placing of a homestead thereon the property was transferred to the wife. If in other respects the declaration conformed to recognized legal tests, the homestead was exempt in the usual manner, irrespective of the transfer.

■ The homestead was by joint declaration of Riddell and his wife. It recited that the parties were husband and wife; it gave the location and character of the property and stated that no former declarations of homestead had been made thereon by either of the parties; that the parties resided in the dwelling on the land, and an estimate of the value of the property was given. Appellant contends that this declaration is defective in that it fails to recite that the husband is the head of the family, and that there is no provision for a joint declaration by husband and wife.

The declaration must contain a statement that the person making it is the head of the family, and if married, the name of the spouse must be given. (Civ. Code, sec. 1263.) The head of the family is the husband when the claimant is a married person. (Civ. Code, sec. 1261.) Under Civil Code, sections 1238 and 1239, a homestead may be selected from the separate property of the wife when she gives her consent "shown by her making or joining in making the declaration of homestead". Section 1239 furnishes an express authorization for a joint declaration. The document in question declared the parties to be "husband and wife". It is sufficient to show Louis C. Riddell as a male, married person. As a married person, by statutory definition he was the head of the family. There was a sufficient compliance with the statute. (*Yager* v. *Yager*, 7 Cal. (2d) 213 [60 Pac. (2d) 422, 106

A. L. R. 664] ; *Lucci* v. *United Credit & Collection Co., supra*; *Simonson* v. *Burr,* 121 Cal. 582 [54 Pac. 87].) In *Reid* v. *Englehart-Davidson etc. Co.,* 126 Cal. 527 [58 Pac. 1063, 77 Am. St. Rep. 206], the declaration was signed "R. M. Reid". It could not be determined from the contents of the declaration whether "R. M. Reid" was husband or wife. If the wife, the declaration was deficient in that it did not aver that the husband had not previously made a declaration. (Civ. Code, sec. 1263.) In the instant matter, both husband and wife made the declaration. It is indicated that the masculine proper name "Louis" was the name of the husband, and that the feminine proper name "Jeanette", the equivalent of Jeanne or Jane, was the name of the wife. The sufficiency of the declaration may be determined from the contents of the document expressly set forth. The first declaration of homestead was valid and the property exempt from execution. It is not necessary therefore to pass upon the validity of the transfer of this property by Mr. Riddell to his wife, nor that of the second declaration of homestead recorded subsequent to the adjudication of Riddell as a bankupt.

Appellant urges that the defense of homestead must be asserted in the bankruptcy proceedings. This contention is primarily urged against the second declaration, though in his closing brief appellant attempts to broaden the terms of the Bankruptcy Act to include the first declaration, this upon the theory that if the transfer of the property to Mrs. Riddell was void as in fraud of Mr. Riddell's creditors, it is entirely immaterial whether or not either declaration of homestead was valid, and that the bankruptcy court has exclusive jurisdiction of any exemption claimed.

The trustee in bankruptcy is vested with title to the assets of a bankrupt as of the date of the adjudication except as to property which is exempt. In *White* v. *Stump,* 266 U. S. 310 [45 Sup. Ct. 103, 69 L. Ed. 301], relied upon by appellant, the property was not exempt under the state law, but was subject to levy and sale. In that case the declaration was filed for record one month after adjudication of bankruptcy. In this case, the first declaration of homestead was recorded over three years before the adjudication of bankruptcy.

There may well be situations where a trustee in bankruptcy should be permitted to ask the court to set aside a conveyance of property fraudulently made, but homesteaded, without determination by the court in such action as to the extent of

the exemption, as where there may be more than one creditor, or where the claims vary on judgment liens, which may or may not attach before the filing of the declaration. In the instant case, the only creditor is the Bank of America National Trust and Savings Association. There is no contention made that other creditors may be affected, and it appears that the time for filing claims has expired. The equity of the Riddells in their home was less than the $5,000 exemption. Section 70 (a) of the Bankruptcy Act (11 U. S. C. A. 110) recognizes that title to exempt property does not pass to the trustee. Sustaining the trustee's technical objection would simply mean that the state court having declared the first declaration of homestead valid, the trustee would take over the property and then be required to recognize the bankrupt's wife's claim that it is exempt by reason of the decree of the state court to that effect as the result of the declaration of homestead thereon—an idle and futile act.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.