[Civ. No. 8849. Third Dist. Nov. 1, 1956.]

HARIKLEA S. KARAGERIS, Plaintiff and Appellant, v. WILLIAM KARAGERIS, Defendant and Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, and Goldstein, Barceloux & Goldstein for Plaintiff and Appellant.

Albert M. King, Raymond A. Leonard and Harry Deirup for Defendant and Appellant.

VAN DYKE, P. J.—Hariklea and William Karageris were husband and wife. They married February 1, 1945. In November of 1952 she sued William for divorce. He answered and cross-complained. Each alleged as to the other the infliction of extreme cruelty, and the trial court found the allegations of both in this respect to be true and granted a divorce to each. Both have appealed, but neither challenges the propriety of the interlocutory decree of divorce. Each challenges, however, that part of the judgment which declares certain property described in the decree to be the separate property of one or the other and declares what property constituted community. The trial court found certain described property to be community and divided it between them equally through the device of a cash award to Hariklea of one-half the net value.

William Karageris had been for years employed in a men's clothing store in Oroville owned by his brother Peter. Since 1926 William had operated the store for Peter under a power of attorney. Peter had returned to Greece, his native land, where he remained. William drew a salary of $100 per month from the store. From time to time William sent funds to Peter derived from the profits of the business. But from 1939 through 1944, because of currency restrictions due to war, no money was sent. After 1944 William resumed sending money to Peter. As of January 1, 1951, William bought the store from Peter for the sum of $15,000. The court found the purchase was made with community funds and that the store business, consisting of stock on hand, furniture and fixtures, good will and store income accumulated after the purchase, was the sole community property owned by the parties. The court fixed the total value of this property at $49,364.09. From the total valuation the court deducted certain living expenses and litigation costs of the parties, thus reducing the net value to $34,211.88, and then directed that William pay one-half of that sum to Hariklea, whereupon the full title to the community property would be in him. There was evidence that from 1926, when Peter went to Greece, until 1939 the store was run by William with the assistance of a brother-in-law under an arrangement whereby, in addition to a salary, William and the brother-in-law were entitled each to one-third of the profits, the balance of the profits belonging to Peter. This arrangement ended in 1939, and William thereafter ran the store alone. When he resumed remittances to Peter in 1945, from 1945 through 1950 he sent various sums totaling approximately $21,000. The total accumulations of store profit, however, exceeded that sum, although the proof was not certain as to just what profits came into the hands of William during the years 1939 to 1944, inclusive. The account books covering that period were lost. It was shown, however, that William had not fully accounted for and paid over to Peter the profits of the store which came into his hands. The trial court made a finding that from 1939 through 1950 William retained the net income from the store and held the same for the account of Peter, save and except the sum of $21,000 paid by William to Peter from January 1, 1945, to December 31, 1950; that the balance of the store income approximated $27,810.55; that it was no longer owed by William to Peter, and that William acquired title to this balance of store income on January 1, 1951, at the same time

that he acquired title to the Karageris store. The court made no allocation of the store profits William had not turned over to Peter, except as is reflected in the findings as to separate property of William. Neither did the court find specifically how or for what consideration William obtained title to Peter's funds. It is clear from the testimony of William, which is undisputed, that, during the years he received profits of the store for Peter's account, he commingled the money so received with his own and invested and reinvested the funds along with his own funds in the various properties which he owned at the time of the decree and which were declared to be his separate property. It also fairly appears that the commingling was so thorough that William would be unable at this time to follow the trust funds and segregate the interest of Peter, or show what trust funds went into the purchase of what properties.

It is the position of Hariklea, on appeal, that the store income from 1939 through 1950 which was retained by William is community property; further that any assets acquired with such store income are likewise community property, and she asks that the judgment be reversed and the cause remanded to the trial court for the purpose of ascertaining the amount of the store income acquired by William, the investments made by him of these funds and for a 50-50 division of these assets as community property. ■ Hariklea relies on the finding of the court that William acquired title to the funds he held for Peter and of the properties in which he had invested those funds as of January 1, 1951, at the time he purchased the store. Hariklea argues that these properties held in trust for Peter by William were acquired by William "either as a part of the purchase of the store business as of January 1, 1951," or through misappropriation by William. She argues that in either case the whole is community property.

A review of the record has led us to the conclusion that the finding of the trial court that William acquired title from Peter to the trust funds and property involved, has no support in the record. First, as to misappropriation, there is no specific finding that William ever misappropriated the property of Peter. In fact, the finding is to the contrary, for the finding that William acquired the trust property from Peter cannot be construed as a holding by the trial court that the acquisition was by misappropriation. Peter's money came into William's hands as Peter's personal property.

It is stated in 73 Corpus Juris Secundum, "Property," section 15(4) as follows:

"Generally, no one can be divested of his property in invitum, where there is not clear warrant of law therefor, . . . . Ordinarily, the owner of personal property cannot be divested of title without his consent; . . . The possession of a property right acquired secretly or by false assertions or unknowingly surrendered by the owner does not deprive him of ownership.

"A person cannot acquire property by his own crime. Title to personal property fraudulently or feloniously obtained does not pass to a wrongdoer, where the wrongful act is a crime at common law; and where property has been obtained from the owner by such act, his unqualified ownership is not changed, and he may peaceably take it in whose hands he may find it. So, a thief can acquire no title to stolen property, . . . ." (See also *Lightfoot* v. *Davis,* 198 N.Y. 261 [91 N.E. 582, 139 Am.St.Rep. 817, 19 Ann.Cas. 747, 29 L.R.A.N.S. 119] and *Kemp* v. *Enemark,* 194 Cal. 748, 752-753 [230 P. 441].)

If William has, in fact, misappropriated the trust funds of his brother, he has not gained title by his tortious acts and is still accountable to Peter for every dollar of store income which came into his hands and was not remitted by him, whether he now has the trust funds in the form received or has transmuted the funds into other forms of property, real or personal. Peter can follow those funds if he chooses into whatever form of property they have been invested. Furthermore, if in making such investments William has commingled his own separate property and can no longer identify and segregate from his own that which belongs to Peter, equity will yet make Peter whole by an appropriate decree. Hariklea is not interested in such assets if William holds by misappropriation. (*Kemp* v. *Enemark, supra.*)

Discarding misappropriation as a possible source of title, we examine the record to see what evidence of acquisition through lawful means can be found to support the trial court's finding that William in January of 1951 acquired the property of Peter. We find none. The best that counsel for Hariklea can say as to how William acquired, if he did acquire, the property of Peter, is that it was *either* by purchase or by misappropriation. It appears in the record that within a few months after William's marriage he purchased real and personal property at a cost of over $40,000. William testified this was money of himself and money belonging to Peter that

was used in the purchase of these properties, and there is no evidence to the contrary. He took title to the properties in his own name, and these same properties are still held by him. Peter may have claims to this property, but Hariklea and the community have none, since it clearly appears William took his separate funds commingled with Peter's funds to make the purchases. The trial court was not obliged to settle affairs between William and Peter and in this litigation could not have done so. We assume it made no effort in that direction. What it was concerned with was to ascertain what property was separate, so far as the community was concerned, and what property was community. Concerning the $40,000 worth of property purchased by William within a few months of his marriage to Hariklea, her counsel say in her brief: ''The testimony showed conclusively that these purchases were paid for 'out of the pot,' and that William was using Peter's money in these investments. . . . It is significant that the defendant below (respondent here) made no attempt to explain his acquisitions of the accumulated store income and made no attempt to segregate the assets of William which he had admittedly acquired with these funds.'' We think it unnecessary to relate in detail the evidence touching upon the handling by William of the trust funds belonging to Peter. It is enough to say that nothing in this record will support the trial court's finding that William ever acquired the trust funds for which he was accountable to his brother.

William has appealed and by his appeal challenges the trial court's holding that the Karageris store was community property. However, he states in his brief that: ''When the plaintiff appealed from the judgment of the trial court the defendant filed a cross appeal upon grounds that had been pressed seriously in the trial of the case. However, the defendant would not have taken an appeal from the judgment if plaintiff had not appealed, and he takes the position now that if the appellate court does not feel that the judgment should be reversed for the alleged errors claimed by the plaintiff, he is content to let the judgment stand rather than have the burden of a retrial of the case upon a reversal because of the errors claimed by the defendant.'' Since what this court has heretofore said necessitates an affirmance of the judgment, so far as is concerned the appeal of Hariklea, we think it unnecessary to discuss the merits of William's attack upon the court's holding that the store was community

property, further than to say that our review of the record has convinced us the holding is sustained by the record.

The judgment appealed from is affirmed as against the attacks made by both appellants, Hariklea to recover her costs on appeal.

Peek, J., and McMurray, J. pro tem.,* concurred.

_____

*Assigned by Chairman of Judicial Council.