Filed 10/1/14  Essex v. Diaz CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| TRISTA ESSEX et al., | |
| Plaintiffs and Appellants, | G050064 |
| v. | (Super. Ct. No. RIC483005) |
| HEIDI DIAZ, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Affirmed.

Tiedt & Hurd, John E. Tiedt and Marc S. Hurd for Plaintiffs and Appellants.

Peabody Law Firm and Timothy P. Peabody for Defendant and Respondent.

\*          \*          \*

Plaintiffs brought a class action suit against Heidi Diaz as the operator of the "Kimkins" Internet Web site for fraud in connection with a membership diet plan. After a bench trial, the court awarded the plaintiffs' class approximately $2,300,000 in damages, including $500,000 in punitive damages. Thereafter, plaintiffs attempted to force the sale of Diaz's dwelling. The trial court denied the application, concluding plaintiffs failed to show the funds used to buy the residence were the fruit of the fraud that resulted in plaintiffs' judgment, and failed to show the fair market value of the property and any equity in the property that could satisfy some part of the judgment. We affirm.

I

FACTS

Plaintiffs obtained a judgment against Diaz in excess of $2,300,000, including $500,000 in punitive damages, on December 16, 2010. The court found Diaz engaged in false and deceptive advertising in connection with her sale of memberships to a diet Web site. Resolution of the issues presented herein do not require us to detail the actions of Diaz that gave rise to the judgment.

On July 10, 2012, subsequent to the sheriff levying on Diaz's interest in the her dwelling, plaintiffs filed a notice of hearing on their application for an order of sale for Diaz's personal dwelling pursuant to Code of Civil Procedure[1] sections 704.740—704.760. The application alleged Diaz's property may qualify for a $75,000 homestead exemption.

Plaintiffs alleged Diaz's dwelling had a $295,000 fair market value. The $295,000 fair market value was based on an *exterior-only* inspection residential appraisal report that included comparable sales. The appraiser expressly stated he was unaware of

_____

[1] All undesignated statutory references are to the Code of Civil Procedure unless otherwise stated.

2

any needed repairs and assumed there were none that would make the property less valuable.

Plaintiffs later contended Diaz was not entitled to a homestead exemption. It appears plaintiffs made this argument based on early appellate court opinions holding a judgment debtor could not hide behind a homestead exemption when the fruits of a fraud had been used to purchase the property. In support of this argument, plaintiffs attached a copy of the underlying judgment, wherein the court found Diaz lied to induce people to pay membership fees to join her Web site and Diaz collected $1,824,210.39 in membership fees by October 15, 2007.

Diaz filed declarations in opposition to plaintiffs' application. She acknowledged plaintiffs obtained a judgment of $2,324,210.39 against her. She purchased the dwelling in September 2007. There was evidence she purchased the dwelling for $444,000 in cash. Diaz filed a homestead exemption claim in October 2007.

Diaz further declared her dwelling needed $40,000 in interior repairs and provided an appraisal which stated the property had a fair market value of $212,000. The reasons for Diaz's substantially lower fair market value, were the use of comparable sales within six months of August 7, 2012, and Diaz's dwelling was "in distressed condition," requiring "a substantial amount of repairs to restore it to a condition which is salable," while the comparable sales were of residences in "turnkey"—i.e., ready to move in— condition. The appraisal listed a number of issues that required fixing before the property could be sold, including "ongoing plumbing leaks [that] have created a current mold hazard which requires mold remediation and restoration," as well as drainage, electrical, natural gas, and sprinkler irrigation leaks. It was concluded "[t]he current physical condition and ongoing issues detract from the overall value and marketability of the subject property."

Plaintiffs retained Fidelity National Title Company to conduct a thorough title search on Diaz's dwelling. The preliminary report prepared by Fidelity National

3

Title Company showed a $30,749.01 judgment lien in favor of The Education Resources Institutes, Inc., a tax lien in the amount of $168,793.26 in favor of the State of California Franchise Tax Board, and a lien for nonpayment of delinquent Riverside County property taxes in the amount of $22,041.42. The liens totaled $221,583.69.

II

DISCUSSION

A. *Standard of Review*

Plaintiffs contend the superior court denied its request to force the sale of Diaz's dwelling because it assumed the fraud exception to the homestead exemption did not apply. Consequently, plaintiffs maintain our review should be de novo. Had the court held there is no fraud exception to the homestead exemption, that would present an issue of law we would review de novo (*SBAM Partners, LLC v. Wang* (2008) 164 Cal.App.4th 903, 907), however, contrary to plaintiffs' contention, it does not appear the court ultimately concluded there is no fraud exception. Rather, the court based its decision on a failure of proof on plaintiffs' part. The court found plaintiffs failed to provide admissible evidence showing the source of funds for the residence was the fruit of Diaz's fraud that resulted in the judgment against her, failed to show the fair market value of Diaz's residence, and failed to demonstrate Diaz had equity in the residence to satisfy the judgment or a portion thereof given the liens against the property.

"When the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden and that party appeals, it is somewhat misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This is because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case. [Citations.] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the

4

evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 279.)

B. *The Trial Court did not err in Denying Plaintiffs' Application.*

Plaintiffs are correct section 704.740 permits a judgment creditor to force the sale of a judgment debtor's dwelling. However, the California Constitution requires the Legislature to provide protections "from forced sale a certain portion of the homestead and other property of all head of families." (Cal. Const., art. XX, § 1.5.) The Legislature fulfilled its obligation in enacting the homestead exemption in Article 4 of Title 9 of the Code of Civil Procedure. (§ 704.710 et seq.) The portion of a judgment debtor's "dwelling" (§ 704.710, subd. (a)) protected under a homestead exemption is either $75,000 (§ 704.730, subd. (a)(1)), $100,000 (§ 704.730, subd. (a)(2)), or $175,000 (§ 704.730, subd. (a)(3)) depending on the status of those living in the homestead. A homestead declaration does not, however, prevent the forced sale of a homesteaded dwelling. (§ 704.970; *In re Morse* (1995) 11 Cal.4th 184, 201 ["creditor may force the sale of a home through a levy pursuant to a writ of execution" in compliance with Article 4].)

At the hearing on a judgment creditor's application for sale through a writ of execution, the court determines whether the dwelling qualifies as a homestead, the amount of the homestead exemption, and the fair market value of the property. (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 844, citing § 704.780, subd. (b).) The court will then order the sale of the dwelling, subject to the applicable homestead amount, "'unless the court determines the sale of the dwelling would not be likely to produce a bid sufficient to satisfy any part of the amount due on the judgment

pursuant to Section 704.800.'  (§ 704.780, subd. (b).)"  (*Ibid.*)  To make that determination, the court considers the fair market value of the dwelling, the amount of senior liens on the property, and the amount of the homestead exemption.  When the value of the property is equal to, or exceeded by, the sum of the liens on the property and the judgment debtor's homestead exemption, the sale of the property would generally be unlikely to produce any funds to apply toward the judgment. (See *Ibid*.)  A fortiorari, there is no equity in the property to satisfy any part of the judgment if the liens on the dwelling exceed the fair market value of the property, even without taking into consideration the amount of any homestead exemption.

1. *The Fair Market Value of the Dwelling*

As noted above, the court found plaintiffs failed to establish the fair market value of Diaz's dwelling.  Plaintiffs' expert opined the dwelling had a fair market value of $295,000.  That determination was made without the expert having viewed the interior of the residence.  Additionally, the expert stated he was unaware of any needed repairs and *assumed* there were none that would make the property less valuable.  Diaz, however, declared the interior of the property needed approximately $40,000 in repairs.  Additionally, her expert concluded Diaz's dwelling was "in distressed condition . . . and requires a substantial amount of repairs to restore it to a condition which is salable."  Diaz's expert listed the areas that needed to be addressed to make the property salable, including ongoing plumbing leaks that "created a current mold hazard which requires mold remediation and restoration."  He concluded the fair market value of Diaz's dwelling was $212,000.

When the trial court sits as the trier of fact, it determines the expert's qualifications, "'the degree of his knowledge and the weight his testimony will carry . . . .'" (*McCleery v. City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1077.)  The court apparently did not give the plaintiffs' expert's valuation of the property any weight.  "'Where it appears that the opinion of a valuation witness is based upon considerations

6

which are proper as well as those which are not, the testimony may be admitted and the trier of fact shall determine its weight and credibility.' [Citation.]" (*City of Fremont v. Fisher* (2008) 160 Cal.App.4th 666, 677.) Given the plaintiffs' expert was unaware of and did not consider the condition of the interior of the dwelling in calculating a fair market value, the court was free to reject the valuation as not being supported by sufficient facts. We do not reweigh the evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 [our task is to determine whether "there is *any* substantial evidence, contradicted or uncontradicted," supporting the trial court's decision].)

2. *The Liens on the Dwelling*

As noted above, the purpose of the hearing on plaintiffs' application was to determine whether the sale of Diaz's property was likely to result in a high enough bid to satisfy at least some of the judgment, after payment of the liens on the property and any applicable homestead exemption. (See § 704.780, subd. (b).) The report of Fidelity National Title Company showed Diaz's dwelling had $221,583.69 in liens against it. As the court impliedly found the fair market value asserted by plaintiffs was not credible, there was an indication the property had a fair market value of $212,000, and the amount of the liens exceeded that amount by more than $9,000, the court did not err in concluding plaintiffs failed to demonstrate there was equity in the property that could be used to satisfy some part of the judgment.

3. *Whether Diaz was Entitled to the Homestead Exemption*

Plaintiffs argue Diaz is not entitled to a homestead exemption because the fruits of the fraudulent conduct that resulted in the judgment were used to purchase the dwelling. In support of their argument, plaintiffs cite a number of appellate decisions predating enactment of the Article 4 of Title 9 of the Code of Civil Procedure. (See *Shinn v. MacPherson* (1881) 58 Cal. 596; *Duhart v. O'Rourke* (1950) 99 Cal.App.2d 277; *Parker v. Russell* (1940) 41 Cal.App.2d 908, 914; *Ohio Electric Car Co. v. Duffet* (1920) 48 Cal.App. 674, 679.) Even were we to assume for purposes of argument there was

7

evidence fraudulently acquired funds were used to purchase the dwelling, there would be no need to address this issue because even without considering whether Diaz was entitled to claim a homestead exemption, plaintiffs failed to show there would likely be a bid that would be more than the amount of the liens against the property.

III

DISPOSITION

The order of the superior court denying plaintiffs' application for a writ of execution is affirmed. Diaz shall recover her costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.